IRELL & MANELLA LLP
Morgan Chu (70446)
MChu@irell.com
Benjamin W. Hattenbach (186455)
BHattenbach@irell.com
C. Maclain Wells (221609)
MWells@irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:   (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Defendant
DEMARAY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DEMARAY LLC, <br><br> Defendant. | Case No. 5:20-cv-09341-EJD <br><br> **DEMARAY LLC'S NOTICE OF MOTION AND MOTION TO DISMISS** <br><br> **Hearing Date**: April 8, 2021 <br> **Hearing Time**: 9:00 a.m. |

**TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on April 8, 2021, at 9:00 a.m., or as soon thereafter as may be heard, Defendant Demaray LLC ("Demaray") shall and hereby does move for an order dismissing Applied Materials, Inc.'s ("Applied") Complaint ("Complaint") with prejudice. This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities included herewith, the accompanying Declaration of C. Maclain Wells and evidence attached thereto, the files, records, and pleadings in this case, such evidence and argument as may be proffered at the hearing of this Motion, and any other matters that the Court deems appropriate.

Dismissal is warranted under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) and failure to state a claim upon which relief can be granted. Dismissal is also appropriate pursuant to this Court's discretion to decline declaratory judgment jurisdiction.

Dated:  January 26, 2021

Respectfully submitted,

Irell & Manella LLP

By: */s/ C. Maclain Wells*
    C. Maclain Wells
    Attorneys for Plaintiff
    DEMARAY LLC

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ................................................................................................1

II.   BACKGROUND ...................................................................................................................2

    A.   The Parties .................................................................................................................2

    B.   Texas Litigation .........................................................................................................2

    C.   Applied's Duplicative Complaints In California ...................................................3

III.   ARGUMENT ........................................................................................................................6

    A.   The Court Should Affirm Its Determination That The Texas Complaints Do Not Give Rise To A Case And Controversy Between Applied and Demaray .................................................................................................7

        1.   The Court Properly Determined That Demaray's Texas Complaints Do Not Support Declaratory Judgment Subject Matter Jurisdiction ...............................................................................7

            a)   There Was No Implicit Allegation Of Direct Infringement ................................................................................8

            b)   There Is No Implicit Allegation Of Indirect Infringement ..............................................................................10

            c)   Applied Presents No New Facts Warranting A Different Outcome ...........................................................................11

    B.   The Court Should Exercise Its Discretion To Decline Jurisdiction ....................16

    C.   The Court Should Dismiss Applied's Defenses Based On Unlawful Licensing Provisions ...............................................................................................17

IV.   CONCLUSION ...............................................................................................................20[1]

---

[1] All exhibits are attached to the concurrently filed Declaration of C. Maclain Wells.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**[2]

*Adobe Sys., Inc. v. Kelora Sys.*,
   2011 WL 6101545 (N.D. Cal. Dec. 7, 2011) ...................................................................6

*Albers v. Yarbrough World Sols.*,
   LLC, 2020 WL 6064334 (N.D. Cal. Oct. 14, 2020) .......................................................19

*Amazon.com, Inc. v. Straight Path IP Grp., Inc.*,
   2015 WL 3486494 (N.D. Cal. May 28, 2015) ................................................................17

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,
   630 F. Supp. 2d 1084 (N.D. Cal. May 20, 2009) ................................................. *passim*

*Arris Grp., Inc. v. British Telecomms. PLC*,
   639 F.3d 1368 (Fed. Cir. 2011) ......................................................................................10

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
   689 F.3d 1303 (Fed. Cir. 2012) ..................................................................................6, 12

*Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,
   2016 WL 11518601 (C.D. Cal. Sept. 8, 2016) ...............................................................13

*Cepheid v. Roche Molecular Sys., Inc.*,
   2013 WL 184125 (N.D. Cal. Jan. 17, 2013) ...................................................................16

*Crossbow Tech., Inc. v. YH Tech.*,
   531 F. Supp. 2d 1117 (N.D. Cal. 2007) ...........................................................................6

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009) ........................................................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) .......................................................................................................6, 7

*Microsoft Corp. v. GeoTag, Inc.*,
   817 F.3d 1305 (Fed. Cir. 2016) ......................................................................................14

*Microsoft v. DataTern*,
   755 F.3d 899 (Fed. Cir. 2014) ........................................................................6, 9, 10, 11

---

[2] Unless otherwise noted, internal citations, quotations and subsequent history are omitted, and emphasis is added unless otherwise indicated.

**Page(s)**

*Power Integrations, Inc. v. De Lara,*
    2020 WL 1467406 (S.D. Cal. Mar. 26, 2020) .......................................................................20

*Proofpoint, Inc. v. InNova Patent Licensing,*
    2011 WL 4915847 (N.D. Cal. Oct. 17, 2011) ...............................................................7, 11, 16

*SanDisk Corp. v. STMicroelectronics, Inc.,*
    480 F.3d 1372 (Fed. Cir. 2007) ...........................................................................................7

*In re Vistaprint Ltd.,*
    628 F.3d 1342 (Fed. Cir. 2010) ..........................................................................................17

*Wenke v. Forest Labs., Inc.,*
    2018 WL 1911957 (N.D. Cal. Apr. 23, 2018) ....................................................................19

*Whitewater W. Indus., Ltd. v. Alleshouse,*
    981 F.3d 1045 (Fed. Cir. 2020) .................................................................................2, 18, 20

**Statutes**

California Business & Professions Code § 16600 ....................................................................18, 20

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..............................................................................1

Federal Rule of Civil Procedure 12(b)(6) ..................................................................2, 19, 20

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   PRELIMINARY STATEMENT

Applied's newest version of its declaratory judgment complaint rehashes the same arguments regarding subject matter jurisdiction already rejected by the Court, and should likewise be dismissed under Federal Rule of Civil Procedure 12(b)(1). The Court already determined that there was no subject matter jurisdiction for Applied's First Amended Complaint ("FAC") in related case no. 5:20-cv-05676-EJD ("*Applied I*") based upon the same causes of action. *See* Ex. 1 (Order). There, the Court considered and rejected Applied's contention that Demaray's earlier-filed complaints in Texas against Intel and Samsung (Applied is one of Intel's and Samsung's reactor suppliers) raised implicit infringement allegations against Applied. Specifically, the Court recognized that in the Texas complaints, Demaray accused methods of thin-film deposition in a physical vapor deposition ("PVD") reactor with a ***specific configuration*** used by Intel and Samsung, and that ***specific reactor configuration***, of infringement. Demaray did not accuse Applied's reactors standing alone of infringement and Demaray has made no express or implied infringement assertions against Applied in the Texas complaints or anywhere else. On these facts, the Court determined that the Texas complaints did not give rise to a justiciable controversy.

Nothing has changed that warrants reconsideration of the Court's prior determination. The few new factual allegations that Applied points to in its new Complaint, if anything, only reaffirm that (1) Demaray is not relying on Applied publications for certain reactor configuration claim limitations, (2) Applied itself represents that it does not supply any reactors in the infringing configurations, and (3) Demaray still lacks sufficient information to determine whether or not Applied is infringing. There is still no case and controversy between Demaray and Applied.

Even if subject matter jurisdiction over this action did exist (it does not), efficiency and judicial economy warrant the Court's exercise of its discretion to decline jurisdiction. Applied's conduct, both here and in Texas, establishes that it did not bring this case to address a threat of legal action, but rather as yet another extreme attempt at forum shopping. The Texas cases are well underway, with their *Markman* hearings in March and trials set for this December, and are best suited to resolving any real issues.

DEMARAY'S NOTICE OF MOTION AND
MOTION TO DISMISS
(Case No. 5:20-cv-009341-EJD)

1    In addition, for independent reasons, the Court should dismiss Applied's licensing and

2   ownership declaratory judgment claims under Federal Rule of Civil Procedure 12(b)(6). Those

3   claims depend on employee agreement assignment provisions that Judge Ware already ruled are

4   "unlawful non-compete provisions" and void as a matter of public policy. *See Applied Materials,*

5   *Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1090 (N.D. Cal.

6   May 20, 2009); *see also Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1055–59 (Fed.

7   Cir. 2020) (reversing district court reliance on unlawful assignment provisions and citing *Advanced*

8   *Micro-Fabrication* with approval). Applied cannot base a "colorable claim on which relief could be

9   granted" upon contract provisions already adjudicated to be unlawful.

10   **II.    BACKGROUND**

11       **A.    The Parties**

12       Demaray is a limited liability company organized under the laws of the State of Delaware.

13   Dkt. 1 ("Complaint" ¶25). Demaray owns U.S. Patent Nos. 7,544,276 and 7,381,657 (the

14   "Demaray patents"). *See* Dkt. 1, Ex. A ("Intel Compl.") ¶5; Dkt. 1, Ex. B ("Samsung Compl.") ¶5

15   (collectively, the "Texas complaints"). Demaray was founded for research, development, and

16   commercialization of new product applications based on technologies developed by Dr. Richard E.

17   Demaray, including the patented technology for the production of low-defect thin films for

18   advanced electronic devices. Intel Compl. ¶3; Samsung Compl. ¶3.

19       Applied is a materials engineering company headquartered in Santa Clara, California.

20   Complaint ¶24. Applied manufactures products used in semiconductor fabrication, including PVD

21   reactors in the Endura product line. *Id.* Intel and Samsung use PVD reactors, from Applied and

22   other suppliers, configured in a specific manner to deposit certain thin films in their semiconductor

23   products. Intel Compl. ¶25; Samsung Compl. ¶28.

24       **B.    Texas Litigation**

25       In July 2020, Demaray filed the Texas complaints against Intel and Samsung, alleging that

26   Intel's and Samsung's use of ***specific reactor configurations*** infringed the Demaray patents. *See,*

27   *e.g.*, Intel Compl. ¶¶22, 47; Samsung Compl. ¶¶25, 50. The Demaray patents have claim elements

28   requiring, for example, the use of a reactor configuration with "a narrow band-rejection filter that

rejects at a frequency of the RF bias power supply coupled between the pulsed DC power supply and the target area." *See, e.g.*, Dkt. 1, Ex. P ("'276 Patent"), claim 1. It is undisputed that the "[Texas] Complaints did not name Applied as a Defendant or expressly accuse Applied of infringement." *See* Complaint ¶27. They instead alleged that Intel and Samsung each "configures, or causes to be configured, [their] RMS reactors such that they comprise a narrow band-rejection filter." *See, e.g.*, Intel Compl. ¶¶39-40 (alleging that "Intel configures, or causes to be configured, the Intel RMS reactors such that they comprise a narrow band-rejection filter"); Samsung Compl. ¶¶42-43 (alleging that "Samsung configures, or causes to be configured, the Samsung RMS reactors such that they comprise a narrow band-rejection filter"). They then use those reactors themselves to perform the processes that they choose to run in the course of manufacturing semiconductor devices. Intel Compl. ¶¶33-35, 39-40; Samsung Compl. ¶¶36-38, 42-43.

The Texas complaints demonstrate Demaray's approach of suing the actual users of the infringing reactor configurations, not equipment suppliers like Applied. Nor would filing suit against Applied make any sense under the current facts because, as Applied knows perfectly well, Applied itself represents that it does not supply any reactors in the infringing configurations. Complaint ¶¶94, 99. Applied affirmatively represents, for instance, that any reactors it supplies do not include foundational claim elements such as the claimed "narrow band-rejection filter" of the specific reactor configurations accused in the Texas suits. Complaint ¶¶95, 100. Demaray has not amended the Texas complaints and they are still the operative pleadings in the Texas actions.

### C.     Applied's Duplicative Complaints In California

A month after the filing of the Texas complaints, Applied filed its third-filed complaint in *Applied I* on August 13, 2020 and, later, its first amended complaint ("FAC") on September 1, 2020. *See* Complaint, ¶40. Applied did so, not because of any threat of impending litigation from Demaray, but to come to the aid of its customers, Intel and Samsung. *See Applied I*, Dkt. 13, FAC ¶1 ("Demaray's lawsuits against Applied's customers have placed a cloud over Applied's products …."). Applied then sought to derail the Texas cases asking this Court for a preliminary injunction enjoining the Texas cases from proceeding. *See* Complaint ¶41.

In opposition to Applied's injunction request, Demaray raised, *inter alia*, issues regarding

the lack of subject matter jurisdiction for Applied's suit. *See id.* ¶42. In an effort to support its

arguments regarding a case in controversy, Applied submitted with its reply in support of its

injunction request, among other materials, a series of declarations from Intel, Samsung, and

Applied Materials (*see, e.g.*, Dkt. 1, Ex. Q)**³** and argued that the Texas complaints raised a self-

servingly alleged subjective "belief" on behalf of Applied that Demaray was "implicitly alleging"

infringement by Applied's reactors by themselves. *See, e.g.*, *id.* ¶5 ("Based on my review of the

Customer Complaints, I ***understood*** that Demaray was making an implied assertion of

infringement of the Asserted Patents against Applied."); *id.* ¶9 ("[A]fter Applied reviewed the

allegations in the Customer Complaints against Intel and Samsung, ***Applied interpreted those***

***allegations*** as directed at … the reactors as manufactured, configured and installed by Applied.").

On December 16, the Court denied Applied's motion for preliminary injunction due to the

lack of subject matter jurisdiction. Ex. 1 (Order). The Court held that "***Applied Has Failed to***

***Allege that Demaray Engaged in Affirmative Acts Directed at Applied***." *Id.* at 4.The Court first

noted that "[t]here is no indication Demaray has ever made any infringement allegations against

Applied." *Id.* at 6. The Court went on to hold that in the Texas complaints, "Demaray alleges Intel

and Samsung configure the reactors such that they are comprised of a pulsed DC power supply

coupled to the target area, a RF bias power supply coupled to the substrate, and a narrow band

rejection filter placed between the DC power supply and the target area in order to deposit the thin

layer films in its semiconductor products. … ***Demaray does not allege in the WDTX Actions that***

***Applied itself configures the reactors or promotes the patented configuration and method.*** ...

Accordingly, ***Applied has failed to allege an actual controversy with respect to direct***

***infringement of Demaray's patents***." *Id.* at 7-8.

Desperate to have a court other than WDTX adjudicate the Intel/Samsung infringement

issues, on December 24, 2020, Applied filed a ***fifth-filed*** Complaint (*Applied II*) on the

substantively duplicative causes of action as in *Applied I*. *See* Dkt. 1 (Complaint). Despite this

---

**³** The Court considered both Applied's reply evidence (Dkt. 47 at 1, n. 1) and the Western

District of Texas complaints and publicly available docket entries in those cases (*id.,* at 3, n. 2) in

determining that subject matter jurisdiction was lacking for Applied's injunction request.

1 Court's prior order addressing the Texas complaints, Applied again argued that "Demaray's

2 affirmative act of filing the Customer Suits, which implicitly accused Applied and Applied's

3 reactors of infringement, created a reasonable potential that infringement claims could be brought

4 against Applied based on the same allegations." *See* Complaint ¶¶3-8. The only additional

5 affirmative acts by Demaray against Applied that Applied added to its new Complaint are: (1)

6 Demaray requesting transfer-related discovery from Applied in Texas, in response to transfer

7 motions filed by Intel and Samsung in Texas that argued about the location of Applied's activities;

8 and, (2) Demaray's explanation to this Court that it would need discovery from Applied to bring

9 infringement counterclaims in *Applied I* (shown below in green in original). *Id.* ¶9. If anything,

10 these actions reaffirm Demaray's position that it does not currently have enough information to

11 accuse Applied of infringement—the opposite of a ripe case and controversy.

12     The other "additional" information on which Applied relies, Demaray's preliminary

13 infringement contentions in the Texas cases (*see* Dkt. 1, Exs. C-D), fares no better. First, Applied

14 acknowledges that Demaray directed these contentions at Intel and Samsung, not Applied. *Id.* Like

15 Demaray's Texas complaints, the contentions do not include any affirmative infringement

16 allegations against Applied. *See, e.g.,* Ex. C at 26 ("As a further example, ***Intel configures and***

17 ***uses, among other reactors, Intel Accused Products in the Endura product line from Applied***

18 ***Materials, Inc. for deposition of such layers*** …."), Ex. D at 27 (similar for Samsung). And, like

19 the Texas complaints, they are based upon (1) publicly available materials regarding Intel's and

20 Samsung's reactors and (2) confidential reverse engineering reports detailing Intel's and

21 Samsung's infringing use of the claimed reactor configurations. *See* Complaint ¶47. While certain

22 Applied publications are cited in the contentions, those documents are coextensive with the

23 materials cited in the Texas complaints. The Court has already determined that ***"[t]he Applied***

24 ***publications Demaray references do not discuss the specific configuration or method covered***

25 ***under Demaray's Asserted Patents*** … Instead, the Applied publications cover general

26 information and features of Applied's reactors, and their ability to be utilized in the reactive

27 sputtering process." Ex. 1 at 8. Like the Texas complaints, in its contentions, Demaray does not

28 cite or rely upon Applied publications for certain claim limitations, *e.g.*, the narrow band-rejection

filter. *See, e.g.*, Dkt. 1, Ex. C at 22; Ex. D at 23.

## III.   **ARGUMENT**

To satisfy Article III's standing requirements, a plaintiff must demonstrate that "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The party alleging jurisdiction bears the burden of showing an "actual controversy." *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1120 (N.D. Cal. 2007). The Federal Circuit has held that a declaratory judgment plaintiff must allege "(1) an ***affirmative act by the patentee related to the enforcement of his patent rights***, and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F.3d 1303, 1318 (Fed. Cir. 2012). The "affirmative act" must be "directed at that plaintiff, not just broad and widespread enforcement activity." *Adobe Sys., Inc. v. Kelora Sys.*, 2011 WL 6101545, at *3-4 (N.D. Cal. Dec. 7, 2011). For example, the mere filing of litigation by a patentee against a customer based on activities that involve the declaratory-judgment plaintiff's product does not create a case or controversy. *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014) ("Appellees argue that DataTern's suits against its customers automatically give rise to a case or controversy regarding induced infringement, we do not agree").

As a preliminary matter, Applied bases its new, fourth-filed complaint on a self-servingly alleged subjective "belief" that Demaray was "implicitly alleging" infringement by Applied's reactors by themselves. *See, e.g.*, Ex. Q, ¶5 ("Based on my review of the Customer Complaints, I ***understood*** that Demaray was making an implied assertion of infringement of the Asserted Patents against Applied."); *id.* ¶9 ("[A]fter Applied reviewed the allegations in the Customer Complaints against Intel and Samsung, ***Applied interpreted those allegations*** as directed at Samsung and Intel's use of the reactors as manufactured, configured and installed by Applied."); *see also, e.g.*, Complaint ¶27 ("Applied also objectively and reasonably believed the allegations were directed at Applied."), ¶53 ("Applied objectively and reasonably believes this to be true."). First, Applied's new Complaint relies on that same declaration (*see* Ex. K) submitted with its reply in support of

1   its injunction request in *Applied I*. The Court has already considered and rejected these arguments.

2   Second, in *MedImmune*, the Supreme Court rejected strict reliance on the "reasonable

3   apprehension of suit" prong of the test for subject matter jurisdiction. *See* 549 U.S. at 132

4   n.11; *see also SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1380 (Fed. Cir.

5   2007) ("The Supreme Court's opinion in *MedImmune* represents a rejection of our reasonable

6   apprehension of suit test."). Now, it is "the objective actions of the patentee [that] are the subject

7   of [the jurisdictional] inquiry," not the subjective beliefs of the declaratory judgment plaintiff. Ex.

8   1 at 5; *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362-63 (Fed. Cir. 2009)

9   (patentee's actions must give reason to believe that it is asserting its rights under the patents).

10  Here, objective actions by Demaray against Applied for enforcement of Demaray's intellectual-

11  property rights are non-existent.

12       **A.    The Court Should Affirm Its Determination That The Texas Complaints Do
                Not Give Rise To A Case And Controversy Between Applied and Demaray**

13       There is no objective basis for the Court to reconsider its determination in *Applied I* that

14  the Texas complaints did not give rise to subject matter jurisdiction. *See* Ex. 1 at 12 ("the Court

15  does not have subject matter jurisdiction over Applied's action for declaratory relief.").

16            1.    The Court Properly Determined That Demaray's Texas Complaints Do Not
17                  Support Declaratory Judgment Subject Matter Jurisdiction

18       As the Court already determined, "the WDTX Actions between Demaray and Applied's

19  customers, Intel and Samsung, do not give rise to an actual controversy as to whether Applied

20  might be liable for direct patent infringement." Ex. 1 at 7. It is undisputed that the Demaray

21  patents cover a "specific configuration or method." *Id.* at 8. And the Court determined that

22  "[a]lthough Applied is a supplier of the reactors capable of this configuration and deposition

23  method, ***Demaray does not allege in the WDTX Actions that Applied itself configures the***

24  ***reactors or promotes the patented configuration and method***." *Id.* The Texas complaints have not

25  been amended and these determinations are as true today as they were previously.

26       This is not a case where an entity makes an infringing product, and its customers are then

27  sued for doing nothing more than purchasing and using it in the only way possible. *See*

28  *Proofpoint, Inc. v. InNova Patent Licensing*, 2011 WL 4915847, at *5 (N.D. Cal. Oct. 17, 2011)

(dismissing for lack of declaratory-judgment jurisdiction where no party "alleged that the mere making or selling of [supplier's] products is unlawful"). There is no allegation in the Texas complaints that the Demaray patents cover all PVD reactor configurations. Ex. M (Demaray Declaration) ¶12 ("The Demaray patents are directed generally at methods of depositing high quality thin films in products by using a particular PVD reactor configuration. They do not cover all PVD reactor configurations."). Rather, the patents cover the use of "*a particular PVD reactor configuration*." *Id.* Demaray's Texas complaints did not accuse Applied of using, making, selling, or offering to sell the specific reactor configurations that Intel and Samsung themselves decide upon and use. *See, e.g.*, Intel Compl. ¶25 ("*Intel configures RMS reactors*, including, but not limited to reactors in the Endura product line …."), Samsung Compl. ¶28 (similar for Samsung).

a)      There Was No Implicit Allegation Of Direct Infringement

The Court previously determined that there was no implicit allegation in the Texas cases that the Applied reactors standing alone infringe—this determination should stand. As an example, the Demaray patent claims require "a narrow band-rejection filter that rejects at a frequency of the RF bias power supply coupled between the pulsed DC power supply and the target area," which can prevent damaging feedback that can occur at the DC power source. *See, e.g.*, Ex. P ('276 Patent), cl. 1. In the Texas cases, Demaray did not allege that Applied uses this specific configuration to deposit thin films or cite to Applied publications to support infringement allegations for this claim limitation. *See* Intel Compl. ¶¶39-40, 57; Samsung Compl. ¶¶42-43, 59. Instead, Demaray relied upon reverse engineering of Intel and Samsung products suggesting Intel's and Samsung's use of the infringing reactor configurations.

In its new Complaint, Applied repeats its rejected argument that the Texas complaints included an "implied" assertion of infringement. *See, e.g.*, Complaint ¶¶7, 16, 27, 39. But, this Court has properly determined that nowhere in the Texas complaints did Demaray allege that Applied's reactors alone necessarily include a narrow band-rejection filter (itself a specific configuration of filter over other filters). Ex. 1 at 11 (there is "no way to tell definitively whether the references to Applied's Endura reactors are intended as required parts of the accused configurations and methods, or whether they are simply offered as illustrations or as part of the

background of the accused reactor configuration and method."). Indeed, Applied represents yet again in its new Complaint that it ***does not supply*** the narrow band-rejection filter. Complaint ¶¶95 ("Applied's Endura products do not infringe claim 1 of the '276 patent at least because these products do not meet or embody … 'a narrow band-rejection filter that rejects at a frequency of the [RF] bias power supply coupled between the pulsed DC power supply and the target area.'"), 100 ("Using Applied's Endura products does not infringe claim 1 of the '657 patent at least because these products do not comprise 'providing pulsed DC power to the target through a narrow band rejection filter such that the target alternates between positive and negative voltages' …."). Given the lack of any allegation from Demaray in the Texas complaints and Applied's own assertions that it does not configure reactors in an infringing manner, the Court should again determine that a justiciable controversy does not exist.

The Federal Circuit's decision in *DataTern* remains instructive. In *DataTern,* the patent owner provided two groupings of claim charts on which an alleged controversy supporting subject matter jurisdiction was based, one group in which the patent owner relied of supplier "provided user guides and documentation for each claim element," and a second group where the infringement allegations did not rely upon supplier documentation for "key claim limitations." 755 F.3d at 905. The Federal Circuit found an adequate controversy existed as to the first group because the "claim charts show that SAP provides its customers with the ***necessary*** components to infringe." *Id.* As to the second group, the Federal Circuit determined that a controversy was lacking because the charts did not rely upon supplier documentation for "***key claim limitations***" and there were no other allegations supporting inducement or contributory infringement assertions against the supplier. *Id.* ("They cite exclusively to third-party … documentation for several key claim limitations … and simply selling a product capable of being used in an infringing manner is not sufficient to create a substantial controversy regarding inducement.").

Applying the same reasoning to Applied's new Complaint demonstrates the lack of a justiciable controversy. Like the second group of claim charts in *DataTern*, Demaray did not rely on Applied information for several limitations, *e.g.*, the narrow band-rejection filter. For its part, Applied has not argued that it is responsible for Intel's or Samsung's infringement and does not

allege that it supplies a narrow band-rejection filter. *See, e.g.*, Complaint, ¶¶94 & 99 ("Applied has not caused, directed, requested, or facilitated any such infringement, much less with specific intent to do so. Applied's reactors in the Endura product line are not designed for use in any combination which infringes any claim of the [Asserted Patents]. To the contrary, each is a product with substantial uses that does not infringe any claim of [these patents]."). Further, the *DataTern* court noted that "DataTern's litigation strategy appears to involve **suing software users, not software suppliers** … This cuts against Microsoft's arguments that they might somehow be next or that litigiousness against direct infringers alone ought to create a substantial controversy." 755 F.3d at 907. Similarly here, Demaray has sued the actual parties, *e.g.*, Intel and Samsung, using the infringing reactor configurations, not equipment suppliers like Applied.

b)      There Is No Implicit Allegation Of Indirect Infringement

The Court also previously determined that "the WDTX Actions and other record evidence do not establish a reasonable potential that Demaray could raise an indirect infringement claim against Applied" (Ex. 1 at 10)—again, there is no reason to revisit this determination. Regarding contributory infringement, the Court correctly found that the "allegations in Demaray's customer actions do not imply that any non-infringing use of Applied products outside the way the products are used by Intel and Samsung are not intended uses … The claims do not speak to the reactors themselves or many other non-infringing uses described in Applied's publications. *See generally* Intel Compl.; Samsung Compl. As Applied has not alleged its reactors could not be used without infringing the Asserted Patents, there is no indication that Applied contributed to the alleged infringement by its customers." Ex. 1 at 11-12; *see also DataTern,* 755 F.3d at 906 ("[T]hey do not imply or suggest that Microsoft's ADO.NET is not a staple article or commodity of commerce suitable for substantial non-infringing use. … our review of the record does not uncover any evidence that Microsoft's ADO.NET is not suitable for substantial noninfringing uses …."). Regarding inducement, the Court correctly found that "on these facts, the Court cannot find that there is a 'controversy between the patentee and the supplier as to the supplier's liability for induced ... infringement.'" Ex. 1 at 12 (citing *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011)). Again, there is nothing to support revisiting these determinations.

1    In its new Complaint, Applied largely rehashes its arguments for indirect infringement

2    from *Applied I. See* Complaint ¶¶55-57. For inducement, Applied makes the additional argument

3    that "Demaray is already necessarily alleging that Applied intentionally causes, encourages, or

4    aids Intel and Samsung to infringe by designing, developing, manufacturing, assembling, and

5    installing the reactor systems to fit their specific needs." *Id.* But, there are no such allegations in

6    the Texas complaints or anywhere else. This case is analogous to *DataTern* where "simply selling

7    a product capable of being used in an infringing manner is not sufficient to create a substantial

8    controversy regarding inducement." 755 F.3d at 905.

9    The court's decision in *Proofpoint* also remains instructive. The district court in *Proofpoint*

10   found that infringement allegations against the plaintiff's customer did not confer jurisdiction over

11   the declaratory judgment suit because, even though the customer complaint identified Proofpoint's

12   product, there was no "reasonable apprehension" of suit for direct or indirect infringement. 2011

13   WL 4915847, at *5. The patentee sued Proofpoint's customers for "*using*" certain products that

14   included Proofpoint's products or services, but there was no allegation "that the mere making or

15   selling of Proofpoint's products is unlawful." *Id.* (emphasis in original). The court also found that

16   the requisite allegations for indirect infringement were lacking: "[f]urthermore, Proofpoint has not

17   alleged that its technology could not be used without infringing the '761 Patent, nor that it had the

18   requisite knowledge or intent for indirect infringement." *Id.* Thus, despite a "specter of indirect

19   liability," the Court held that it did not have jurisdiction. *Id.*

20   As in *DataTern* and *Proofpoint*, here there are no allegations in the Texas complaints

21   demonstrating that Demaray directed any affirmative act of enforcement at Applied, that

22   Applied's products have no non-infringing uses, or that Applied had any intent to induce

23   infringement by its customers. To the contrary, Demaray has not relied on Applied product

24   information for several limitations, *e.g.*, the narrow band-rejection filter. And, Applied argues that

25   it does not supply reactors in such a configuration or suggest the use of such a configuration.

26          c)    Applied Presents No New Facts Warranting A Different Outcome

27   In addition to the Texas complaints, Applied's new Complaint rehashes many of the same

28   alleged jurisdictional facts already considered, and rejected by, the Court. For example, Applied

- 11 -

DEMARAY'S NOTICE OF MOTION AND
MOTION TO DISMISS
(Case No. 5:20-cv-09341-EJD)

again relies on allegations regarding:

- "the commercial realities of the relationship between Applied and its customers using Applied's products;"

- "Demaray's exclusive reliance on Applied's products in the Customer Complaints;" and,

- "Applied's customers' confirmation that they do not perform the post-installation modifications to Applied's reactors that Demaray contended took place."

Complaint ¶¶9 (listing of facts), 17 (same), 52 (same), 93 (same), 98 (same). Applied raised its commercial relationships with its customers and its allegations regarding post-installation modifications in its reply supporting its injunction request (*Applied I,* Dkt. 28 at 3-5; Dkt. 28-6 through 28-12 (Applied, Intel and Samsung declarations)) and the Court specifically considered and rejected Applied's arguments related thereto that these relationships establish a case and controversy in rendering its prior order. *See* Ex. 1, at 1, n.1 (considering reply evidence). The Court similarly rejected Applied's arguments regarding alleged "exclusive reliance on Applied's products in the Customer Complaints." Ex. 1 at 7-8 (finding that Applied publications were relied upon for background and general attributes of PVD reactors). Nothing changed between the Court's prior order and Applied's filing of its new Complaint warranting reevaluating the Court's prior determinations.

Applied's attempt to circumvent the Court's prior determinations based upon six additional allegations dating after the filing of the complaint in *Applied I* should also fail. *See* Complaint, ¶¶9 (listing of facts), 17 (same), 52 (same), 93 (same), 98 (same). First, Applied acknowledges that only the last three new allegations are "[Demaray] acts expressly directed at Applied" (*id.* ¶9 (corresponding to the green color code in the chart above)). By Applied's own admission, the other alleged facts are not "affirmative acts by the patentee [directed at Applied] related to the enforcement of patent rights" relevant to a jurisdictional inquiry. *Ass'n for Molecular*, 689 F.3d at 1318. Nonetheless, each "new" allegation is addressed below:

               (1)     "Demaray's infringement contentions in the Customer Suits"

Prior to the Court's order finding subject matter jurisdiction lacking, Applied made the same allegations regarding Demaray's infringement contentions to the Court in the *Applied I* case management statement (Dkt. 40 at 3-4) and its opposition to Demaray's motion to dismiss (Dkt.

42, Exs. E-F). These contentions were also submitted in public filings in the Texas cases and thus the Court considered them in rendering its prior order. *See* Ex. 1 at 3, n. 2 (taking judicial notice). In other words, the Court already considered and rejected Applied's arguments related thereto.

Demaray provided the contentions in the Texas cases before receiving any discovery from Intel, Samsung or Applied. They were thus coextensive with the allegations in the Texas complaints. Of note, Demaray's preliminary infringement contentions from the Texas cases have been redacted to remove references to confidential Demaray materials and references to reverse engineering reports of Intel and Samsung products—reverse engineering that is not possible because (as far as Demaray knows) Applied does not sell semiconductor products to the public. *See* Exs. C-D. These contentions do not include implicit infringement claims against Applied. Instead, the contentions, like the Texas complaints, state that Intel and Samsung "configure[] and use[], among other reactors … in the Endura product line from Applied Materials, Inc." Ex. C at 26; Ex. D at 27. The contentions also do not rely on Applied documentation for certain limitations, including the narrow band-rejection filter. Ex. C at 22 (narrow band-rejection filter limitation); Ex. D at 23 (same). For the method claims, the contentions accuse Intel and Samsung, not Applied, of practicing the method of depositing the thin film. Ex. C at 44 ("Intel practices a method of depositing a film …."); Ex. D at 44 ("Samsung practices a method of depositing a film ….").

(2)    "Demaray's refusal to grant Applied a covenant not to sue"

Applied's new complaint attaches email correspondence between counsel in which Applied's counsel, not Demaray's counsel, mentions a covenant not to sue. *See* Ex. E. Regardless, as discussed above, Demaray is not currently in a position to determine whether Applied's reactors standing alone infringe the Demaray patents and would need discovery from Applied to make that determination given that, to Demaray's knowledge, reverse engineering Applied semiconductor products is not an option. For this reason, Demaray could not possibly take a position one way or the other on a covenant not to sue—but, as Demaray has explained, that is due to a lack of information, and is plainly not an affirmative enforcement act supporting a ripe case and controversy. Other California district courts have held that refusal to provide a covenant is of little relevance even where there was sufficient information. *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*,

2016 WL 11518601, at *4 (C.D. Cal. Sept. 8, 2016) ("a refusal to provide such a covenant alone is not particularly significant.").

(3)   "Demaray's refusal to inform Applied or the Court in the DJ Action whether it will assert compulsory counterclaims"

Applied's request that the Court deviate from the Federal Rules and order Demaray to make a decision regarding whether to assert infringement counterclaims prior to Demaray filing an answer in this case has been rejected. *See, e.g.*, *Applied II*, Dkt. 27 at 4-5 (requesting immediate decision on counterclaims). The Court denied the same Applied request in *Applied I.* Dkt. 40 at 12 (making same request in case management statement). This is thus not a new issue. Applied's reason for requesting such a deviation for the timing under the Federal Rules is obvious—Demaray would be agreeing to avail itself of this Court's jurisdiction by filing such counterclaims. *See Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1310 (Fed. Cir. 2016) (jurisdiction of counterclaims survives a 12(b)(1) motion against complaint). Procedural gamesmanship is not a basis for finding subject matter jurisdiction. In addition, as discussed above, Demaray is not in a position currently to determine whether Applied's reactors standing alone infringe the Demaray patents and would need discovery from Applied to make that determination.

(4)   "Demaray's requests to obtain discovery from Applied to determine if Applied allegedly infringes"

As mentioned above, Demaray has consistently informed the Court of the need—if the case proceeds and Demaray is to be forced to make an election about counterclaims—for "targeted discovery of information from Applied regarding matters such as the configurations of PVD reactors that Applied manufactures and uses [in order to] … address whether counterclaims for infringement are appropriate in this case." *Applied I*, Dkt. 40 at 11. Again, this is not a new issue. Because Applied, to Demaray's knowledge, does not have semiconductor products for reverse engineering potentially implicating the specific configuration addressed in the Demaray patents, Demaray is not in a position currently to assert that Applied reactors standing alone infringe. Applied has no legitimate reason to fear "accusations" that Demaray has not made and has repeatedly reaffirmed it lacks the ability to make. Self-serving, alleged paranoia about accusations that have not been made, and cannot be made, does not warrant federal subject matter jurisdiction.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(5)    <u>"Demaray's serving of subpoenas to Applied for discovery<br>[in the Texas cases]"</u>

Regarding discovery from the Texas cases, Demaray has a real need for purposes of pending transfer motions to determine the location of Intel's and Samsung's reactors having the accused configurations. Intel and Samsung have refused to answer basic questions bearing on the transfer motions and pointed to Applied as having some of that information. Hence the Applied subpoena. *See* Exs. F-G ("Transfer Requests"). There is nothing improper with Demaray's collecting legitimate transfer-related information from Applied or anyone else in those cases via a subpoena. It is currently unclear what configuration information Applied will produce in the Texas cases as it is resisting discovery, necessitating a motion to compel set for hearing the same day as this motion is set to be filed.

Regardless, Applied's position that such discovery shows an intent to accuse Applied of infringement misapprehends the very information sought (which, in any event, Applied refuses to provide). A request for information about the geographic location of Intel and Samsung reactors (the request that was made) for opposing venue motions in which Intel and Samsung raised the subject is, obviously, quite different from an accusation that Applied reactors standing alone infringe (an accusation that has not been made). Applied seems to be suggesting that Demaray had to choose to either (i) not take discovery necessary to oppose pending motions to transfer the Texas cases, and therefore forfeit the issue and have the cases transferred to California, or (ii) take the discovery necessary to oppose the motions and thereby subject itself to suit in California—either way ending up against its will in California litigation. Applied is mistaken. Demaray was entitled to seek discovery necessary to respond to pending motions in other cases; it did so without accusing Applied of infringement in any way; and that necessary participation in a separate litigation does not enable Applied to circumvent this Court's prior ruling.

(6)    <u>"Demaray's representations in the Customer Suits that the<br>discovery from Applied is necessary to determine which<br>reactors allegedly infringe"</u>

As discussed above, regarding requested transfer discovery, in certain respects Intel and Samsung have also refused to answer particular questions about the configurations of their reactors.

DEMARAY'S NOTICE OF MOTION AND<br>MOTION TO DISMISS<br>(Case No. 5:20-cv-09341-EJD)

Once again, they told Demaray to obtain that information from Applied—which Demaray then endeavored to do through its subpoena. *See* Exs. F-G ("Transfer Requests"). Here too, Applied's reliance on the subpoena that Intel and Samsung (represented in part by the same counsel representing Applied) told them to pursue is misplaced as discussed above. Simply put, the subpoena seeks documents; it does not make allegations. Even if it turns out that Applied knows more about certain internal details of some reactors than Intel and Samsung, none of that means that Applied is infringing, or that Applied is being accused of infringement, or even that the information within its possession would support a portion of an infringement case against Intel or Samsung. As above, Applied self-servingly misconstrues the entirely proper reasons for which the information (that Applied refuses to provide) is being sought: for use in the Texas cases, where Demaray is required to respond to allegations from Intel and Samsung that call for that information.

In sum, the majority of Applied's "new" allegations were before the Court when it found subject matter jurisdiction was lacking, and the remainder do not materially change the analysis.[4] The result here should accordingly be no different than the first time around.

### B.  The Court Should Exercise Its Discretion To Decline Jurisdiction

Even if a case or controversy existed (and it does not), it would be appropriate for this Court to decline jurisdiction. The Declaratory Judgment Act jurisdiction is never mandatory, and it is proper for the Court to decline jurisdiction to promote judicial efficiency and to avoid gamesmanship. *See Proofpoint*, 2011 WL 4915847 at *6–7 ("Even if the Court were to find that declaratory jurisdiction *might* be proper, it would nevertheless be prudent to decline jurisdiction given the pendent Texas Action … the focus on judicial efficiency that underlies both the first-filed rule and the transfer analysis plainly supports the Court's decision to decline jurisdiction." (emphasis in original)); *Cepheid v. Roche Molecular Sys., Inc.*, 2013 WL 184125, at *13 (N.D. Cal. Jan. 17, 2013) (finding no subject matter jurisdiction and additionally holding that it would

---

[4] Applied also argues that its license defense is an "independent reason" for jurisdiction. Complaint ¶18. Applied's third and fourth counts make clear Applied is seeking a "Declaration of non-infringement" based upon its license and ownership allegations. *Id.,* ¶¶100-118. If subject matter jurisdiction is lacking for non-infringement, it would be lacking for these defenses as well.

decline jurisdiction even if a case or controversy existed). The Texas court has a broader set of

issues before it that are not limited to Applied's reactors or to the theories before this Court.

Exercising jurisdiction over the counts in the new Complaint matter would guarantee a proceeding

with at least some overlap on a subset of issues and some duplication of effort to those in Texas.

*See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) ("[H]aving the same magistrate

judge handle this and the co-pending case involving the same patent would be more efficient….");

*see also Amazon.com, Inc. v. Straight Path IP Grp., Inc.*, 2015 WL 3486494, at *8 (N.D. Cal. May

28, 2015) ("[A]llowing this case to continue in California will only duplicate the workload of the

courts, … and risk conflicting decision by sister courts.").

        In October 2020, Judge Albright, the presiding judge in the Texas cases, held a Case

Management Conference in which he (1) rejected a request by Intel/Samsung that the Texas court

not enter a case schedule and stay the Texas cases in favor of this case, (2) set a *Markman* hearing

date of March 26, 2021, and (3) set a trial date of December 27, 2021. Ex. 2 (Case Readiness

Report); Ex. 3 (Scheduling Order). Given that the Texas cases are proceeding in a timely manner,

allowing this case to proceed in parallel would be the least efficient approach—it would guarantee

overlapping proceedings on at least a subset of issues, including claim construction and certain

infringement issues. Thus, considerations of efficiency and judicial economy provide a compelling

basis to decline jurisdiction even if the Court were to find that a case or controversy exists.

### C.    The Court Should Dismiss Applied's Defenses Based On Unlawful Licensing Provisions

        Applied's Complaint includes counts based upon alleged licensing and ownership over the

Demaray Patents. Complaint, ¶¶101-118. These defenses are based on two assignment provisions

in Applied and Applied Komatsu employment contracts, one of which is identical to the provision

held unlawful by the court in *Advanced Micro-Fabrication,* 630 F. Supp. 2d at 1090, and the

second of which is even more onerous:

| Assignment Provision Held *Unlawful* By Judge Ware | Applied Provision (Complaint ¶¶90, 111) | Applied Komatsu Provision (Complaint ¶¶89, 105) |
|---|---|---|
| In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my | In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my | In case any invention is described in a patent application or is disclosed to third parties by me after terminating my employment |

| employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries. | employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries. | with [Applied Komatsu], it is to be presumed that the invention was conceived or made during the period of my employment for [Applied Komatsu], and the invention will be assigned to [Applied Komatsu] as provided by this Agreement, provided it relates to my work with [Applied Komatsu] or any of its subsidiaries. |

In *Advanced Micro-Fabrication*, Judge Ware held that "the Assignment Clause is overly broad with respect to both subject matter and temporal scope." *Id.* at 1090–91. First, it was "not limited to inventions that are based on [the former employer's] confidential information … Rather, the Assignment Clause broadly targets any inventions 'relate[d] to' former employees' 'work.'" *Id.* at 1090. Second, the Assignment Clause was "deficient in that it [was] not limited to inventions conceived by former Applied employees while employed at Applied." *Id.* The clause was thus void under California Business & Professions Code Section 16600. *Id.* at 1091. Given the public policy behind § 16600, Judge Ware rejected the request for contract reformation. *Id.* ("The Court is not permitted to apply any narrowing construction to limit the application of the Assignment Clause to confidential information or to inventions conceived by former Applied employees during their tenure at Applied."). Thus, the Applied provision violated § 16600 and was irredeemably void. The Applied Komatsu assignment provision on which Applied also relies is even more egregious because it ***extends indefinitely***, a temporal scope that is infinitely past the one-year limitation determined by Judge Ware to be a "post-employment penalty that violates California public policy." *See id.*; *see also Whitewater*, 981 F.3d at 1055 (citing positively to Judge Ware's decision in *Advanced Micro-Fabrication*).

It is undisputed that all of Applied's ownership and licensing claims directly depend on a Sale and Relationship Agreement or Applied's unlawful provisions. Complaint, ¶¶103 (SRA basis for license), 111 (Assignment provision for lack of ownership claim). In *Applied I*, Applied's FAC stated unambiguously Applied's allegation that the "Amended Exhibit 3 converted [the employee] assignment obligation into a perpetual royalty-free license to Symmorphix's patents relating to

1    sputtered silicon deposition technology." *Applied I*, Dkt. 13, FAC ¶37. Indeed, the relevant license

2    grant of the Sales and Relationship Agreement itself begins with "***[t]o the extent required by***

3    ***existing [Applied Komatsu] Employee Agreements with any Symmorphix personnel***,

4    Symmorphix grants to [Applied Komatsu] a non-assignable, non-transferable, non-exclusive,

5    perpetual, royalty-free license …." Complaint ¶74; Ex. K at 3(b). In other words, nothing about

6    Applied's licensing and ownership defenses is separate and apart from the unlawful provisions

7    addressed in *Advanced Micro-Fabrication.*

8          Given that Applied was a party to the prior decision in *Advanced Micro-Fabrication*,

9    collateral estoppel applies to preclude it from re-litigating the illegality of its assignment

10   provisions. *See Wenke v. Forest Labs., Inc.*, 2018 WL 1911957, at *2 (N.D. Cal. Apr. 23, 2018).

11   The provisions previously adjudicated are identical, were actually litigated and necessarily

12   decided, and reached a final judgment on the merits against Applied. *See id.*

13          In its new Complaint, Applied alleges that "[o]n information and belief, Dr. Demaray and

14   the co-inventors of the Asserted Patents conceived of the alleged inventions in the Asserted

15   Patents using the confidential information, intellectual property, and equipment of their former

16   employers, Applied and Applied Komatsu." Complaint, ¶62. Applied improperly cuts this theory

17   out of whole cloth. Noticeably absent is any factual allegation as to what confidential information

18   or intellectual property was allegedly improperly used or any cause of action for trade secret

19   misappropriation. To the contrary, the fact that the Demaray patents claim priority to a parent

20   application in 2002, years after the SRA and formation of Symmorphix, leads to the opposite

21   conclusion. *See* Exs. O-P. *Albers v. Yarbrough World Sols.*, LLC, 2020 WL 6064334, at *3 (N.D.

22   Cal. Oct. 14, 2020) ("To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain

23   sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.").

24          Applied also argues that the SRA should be rewritten to exclude the language "[t]o the

25   extent required by existing [Applied Komatsu] Employee Agreements …." Complaint, ¶¶79-82.

26   But Applied has not brought a claim for contract reformation. Applied cannot base a claim on a

27   facially defective contract interpretation. Applied ignores its own allegations in its FAC in *Applied*

28   *I* in arguing that this limiting clause is somehow inapplicable. It was Applied that alleged the

"Sales and Relationship Agreement between Applied Komatsu and Symmorphix explains that it applies '[t]o the extent required by existing [Applied Komatsu] Employee Agreements with any Symmorphix personnel.'" *Applied I,* Dkt. 13, FAC ¶32. As recognized in the FAC, the relevant license grant of the SRA begins with "[t]o the extent required by existing [Applied Komatsu] Employee Agreements with any Symmorphix personnel, Symmorphix grants to [Applied Komatsu] a non-assignable, non-transferable, non-exclusive, perpetual, royalty-free license ...." *Id.* ¶19. And, Applied itself stated that the "Amended Exhibit 3 [the SRA] converted [the employee] assignment obligation into a perpetual royalty-free license to Symmorphix's patents relating to sputtered silicon deposition technology." *Id.* ¶37. In other words, at every turn in the FAC, Applied tied the SRA to the unlawful employee assignment provisions. Applied's own allegations in *Applied I* recognized that the only possible interpretation of the SRA, as a legal matter, is that it was dependent on the illegal employee assignment agreements.

According to California public policy, employers cannot hold facially illegal agreements over their former employees and rely on the fact that "[m]any, perhaps most, employees would honor these clauses without consulting counsel or challenging the clause in court." *Advanced Micro-Fabrication*, 630 F. Supp. 2d at 1091. Given the Federal Circuit's decision in *Whitewater* confirming the application of California law in *Advanced Micro-Fabrication* as good law, there is no plausible license or ownership claim based upon the unlawful Applied assignment provisions on which relief can be granted. They should therefore be dismissed under Rule 12(b)(6). *See Power Integrations, Inc. v. De Lara*, 2020 WL 1467406, at *14 (S.D. Cal. Mar. 26, 2020) ("The nonsolicitation and noncompetition clauses are unenforceable under § 16600 and overly broad. Plaintiff cannot state a plausible claim based on Defendants' alleged breach of those clauses ....").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Demaray's motion to dismiss.

Dated:  January 26, 2021

          Respectfully submitted,
          IRELL & MANELLA LLP

          By: */s/ C. Maclain Wells*
             C. Maclain Wells
             Attorneys for Defendant DEMARAY LLC