UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>           Plaintiff,<br><br>     v.<br><br>DEMARAY LLC,<br><br>           Defendant. | Case No.  5:20-cv-09341-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

In this declaratory judgment action, Plaintiff Applied Materials, Inc. ("Applied") asks the Court to declare that its products do not infringe Defendant Demaray LLC's ("Demaray") patents—(i) U.S. Patent No. 7,544,276 (hereafter "276") and (ii) U.S. Patent No. 7,3381,657 (hereafter "657") (collectively the "Asserted Patents").  Applied seeks further declaratory relief asserting that infringement is precluded by a non-exclusive, perpetual license and an assignment of rights.

Presently before the Court is Demaray's motion to dismiss, in which Demaray contends that Applied has failed to allege a justiciable controversy under the Declaratory Judgment Act.  *See* Notice of Motion and Motion to Dismiss ("Mot."), Dkt. No. 30.  Additionally, Demaray argues Applied has failed to state a claim which would warrant declaratory relief for its licensing and assignment of rights-based claims.  *Id.*  Applied has filed an opposition ("Opp'n") (Dkt. No. 38), to which Demaray filed a reply ("Reply iso Mot.") (Dkt. No. 41).  Having considered the record, the parties' submissions, and the relevant legal authority, the Court **GRANTS in part** and **DENIES in part** Demaray's motion.[1]

---

[1] The Court took this motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b)

1

2

United States District Court
Northern District of California

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Asserted Patents

Demaray's Asserted Patents concern the specific configuration of physical vapor deposition ("PVD") reactors and a method for the deposition of thin layer films onto substrate materials used during the semiconductor manufacturing process.  *See* Complaint ("Compl."), Dkt. No. 1-1, Ex. A (*Demaray LLC v. Intel Corp.*, (W.D. Tex. No. 6:20-cv-634-ADA filed July 14, 2020) (hereinafter, "Intel Compl.")); *see also* Dkt. No. 1-2, Ex. B (*Demaray v. Samsung Electronics Co., Ltd. (A Korean Company) et al*, (W.D. Tex. No. 6:20-cv-636-ADA filed July 14, 2020) (hereinafter, "Samsung Compl.")).  Both patents are entitled "Biased Pulse DC Reactive Sputtering of Oxide Films" and share a common specification.  The '276 patent discloses apparatus claims directed to PVD reactors having certain claim elements requiring the use of a reactor configuration with three power supply-related limitations: (1) a "pulsed DC power supply coupled to the target," (2) "an RF bias power supply coupled to the substrate," and (3) "a narrow band-rejection filter that rejects at a frequency of the RF bias power supply coupled between the pulsed DC power supply and the target area."  Compl. ¶ 33 (citing Intel Compl. ¶¶ 33, 36, 39; Samsung Compl. ¶¶ 36, 39, 42).

The '276 patent is supplemented by Demaray's '657 patent, which discloses method claims delineating the deposition of thin layer films onto a substrate by pulsed DC reactive sputtering using "a pulsed DC power supply coupled to the target" and "an RF bias power supply coupled to the substrate."  Compl. ¶ 29.  The '657 patent also describes and claims the use of "a narrow band-rejection filter that rejects at a frequency of the RF bias power supply coupled between the pulsed DC power supply and the target area."  *Id.*  The narrow band rejection filter allows the power sources to properly function, but prevents damaging feedback to the pulsed DC power source from the RF bias power supply.  *Id.* ¶ 36 (citing Intel Compl. ¶¶ 39-40; Samsung Compl. ¶¶ 42-43).

United States District Court
Northern District of California

**B.    Demaray's Actions Against Applied's Customers**

Applied and Demaray's dispute follows allegations that Intel Corporation ("Intel") and Samsung Electronics Co. Ltd. ("Samsung"), two of Applied's customers, have infringed Demaray's Asserted Patents.  In July 2020, Demaray filed separate patent infringement lawsuits against Intel and Samsung in the Western District of Texas ("WDTX Customer Cases"), alleging that both have infringed the Asserted Patents by configuring reactors, including Applied's Endura line of reactors, in an infringing manner while also employing Demaray's patented method in the fabrication of their semiconductor devices.  *See generally* Intel Compl.; Samsung Compl.

**C.    Applied's Actions Against Demaray**

In response to the WDTX Customer Cases, Applied filed a declaratory relief action against Demaray, which also focused on the Asserted Patents.  *See Applied Materials, Inc. v. Demaray LLC*, (N.D. Cal. No. 5:20-cv-05676 filed August 13, 2020) ("*Applied I*").  Compl. ¶ 40.  Similar to its claims in this action, Applied sought a declaration that its reactors did not infringe the Asserted Patents.  *Applied I*, First Amended Complaint,  Dkt. No. 13 ¶ 1.  Applied also sought to enjoin Demaray from continuing to litigate the WDTX Customer Cases while the declaratory relief action remained ongoing.  *See Applied I*, Motion for Preliminary Injunction, Dkt. No. 14.

Demaray opposed Applied's request for a preliminary injunction, arguing in part that the Court lacked subject matter jurisdiction over Applied's action and should therefore deny its request to enjoin Demaray.  *See Applied I*, Opposition to Applied Materials' Motion for Preliminary Injunction, Dkt. No. 13 at 5-8.  Thereafter, Demaray also filed a motion to dismiss the *Applied I* action for lack of subject matter jurisdiction or alternatively, for failure to state a claim.  *Applied I*, Dkt. No. 39.  Before ever turning to Demaray's motion to dismiss, the Court denied Applied's motion for preliminary injunction finding that it lacked subject matter jurisdiction over its action for declaratory relief.  *Applied I*, Order Denying Motion for Preliminary Injunction ("Prelim. Ord"), Dkt. No. 47.  At that time, Applied had not sufficiently alleged the existence of an actual case or controversy between the parties; Applied failed to sufficiently allege either that

United States District Court
Northern District of California

1  Demaray had engaged in affirmative acts directed at Applied or that Applied might be liable for

2  direct or indirect infringement related to its customers' alleged infringement.  *Id.* at 4-12.

3         Following the denial of its motion for preliminary injunction, Applied filed this separate

4  action for declaratory relief on December 24, 2020.[2]  Applied's latest complaint includes new

5  factual allegations relating to Demaray's conduct since Applied filed its first amended complaint

6  in *Applied I*.  The complaint notes: (i) declarative statements from Intel and Samsung officials

7  asserting that neither company performs the post-installation modifications to Applied's reactors

8  which Demaray contends takes place; (ii) Demaray's refusal to grant Applied a covenant not to

9  sue; (iii) Demaray's refusal to inform Applied or the Court if it will assert compulsory

10 counterclaims against Applied; (iv) Demaray's requests to obtain discovery from Applied to

11 determine if Applied allegedly infringes the Asserted Patents; (v) that Demaray asked Applied to

12 produce materials regarding the reactors it supplies to Intel and Samsung; and (vi) representations

13 made by Demaray to the court in the WDTX Customer Cases about the need for discovery from

14 Applied to determine which of Intel's and Samsung's reactors allegedly infringe.  Compl. ¶ 52.

15        Moreover, Applied alleges that Demaray's filings and the continued litigation of the

16 WDTX Customer Cases also give rise to a substantial controversy between the parties because

17 Applied owns and/or is licensed to use the Asserted Patents.  Demaray's founder, Ernest Demaray,

18 and three other named inventors of the Asserted Patents are former and/or current employees of

19 Applied or Applied's affiliate, Applied Komatsu.  Compl. ¶ 18.  In December of 1998, Mr.

20 Demaray along with other employees from Applied and Applied Komatsu, left to start a new

21

22 _____

23 [2] Applied also filed an administrative motion seeking leave to lodge its new declaratory judgment complaint and for it to become the operative complaint in *Applied I*.  *Applied I*, Dkt. No. 48.  The

24 Court, however, denied Applied's administrative motion to lodge its new declaratory judgment complaint.  *See Applied I*, Dkt. No. 53.  The Court found Applied's request was procedurally

25 improper and concluded that Applied was seeking a request for leave to amend or supplement the operative complaint in *Applied I*.  *Id.* at 3.  Because Applied had filed its latest complaint as a

26 separate action, the Court related the new action to *Applied I*.  *See Applied I*, Related Case Order, Dkt. No. 54.  On January 25, 2021, Applied voluntarily dismissed the operative complaint in

27 *Applied I* and all claims asserted therein without prejudice.  *See Applied I*, Dkt. No. 55.  As a result, Demaray's pending motion to dismiss in *Applied I* was terminated.  *Id.*, Dkt. No. 62.

Case No.: 5:20-cv-09341-EJD

28 ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

company, Symmorphix, and began work on similar thin film technology they initially worked on at Applied.  *Id*. ¶ 18-19.  Applied Komatsu and Symmorphix executed a Sale and Relationship Agreement ("SRA"), which Applied alleges was later amended to grant Applied Komatsu a perpetual, royalty-free license to "any patent applications filed for inventions, improvements, or enhancements developed by Symmorphix relating to sputtered silicon deposition technology."  *Id*. ¶ 78.  Applied also alleges that the SRA allowed Applied Komatsu to transfer or assign the license to Applied and for Applied Komatsu's customers to use the inventions as well.  *Id*.  Separately, Applied contends that one of the named inventors of the Asserted Patents, Mukundan Narasimhan, was an employee of Applied and under the provisions of his employee agreement, Mr. Narasimhan's ownership rights in the Asserted patents' parent application were automatically assigned to Applied.  *Id*. ¶ 90.

Applied now seeks (1) a declaration that Applied's reactors, including those in the Endura product line, do not directly or indirectly infringe any claim of the '276 patent; (2) a declaration that Applied's reactors, including those in the Endura product line, do not directly or indirectly infringe any claim of the '657 patent; (3) a declaration that Applied holds a non-exclusive, perpetual, royalty free license to the Asserted Patents; and (4) a declaration that Applied's reactors cannot infringe the Asserted Patents because of an assignment of rights to Applied and Demaray's failure to join all co-owners.  In response, Demaray has filed the instant motion to dismiss, seeking dismissal under Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.     LEGAL STANDARDS

### A.     Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Although lack of statutory standing requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1).  *See Maya v. Centex Corp.*,

1    658 F.3d 1060, 1067 (9th Cir. 2011).

2         "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v.*

3    *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the

4    allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."

5    *Id*.  The Court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6):

6    Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

7    favor, the court determines whether the allegations are sufficient as a legal matter to invoke the

8    court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  "[I]n a factual

9    attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves,

10   would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  "In

11   resolving a factual attack on jurisdiction," the Court "may review evidence beyond the complaint

12   without converting the motion to dismiss into a motion for summary judgment." *Id*.  The Court

13   "need not presume the truthfulness of the plaintiff's allegations" in deciding a factual attack. *Id*.

14        Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule

15   12(b)(1), the plaintiff bears the burden of establishing the Court's jurisdiction. *See Chandler v.*

16   *State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

17        **B.    Federal Rule of Civil Procedure 12(b)(6)**

18        A complaint survives a motion to dismiss under Rule 12(b)(6) if it contains a "short and

19   plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556

20   U.S. 662, 663 (2009).  A claim must be "plausible on its face," which means that the Court can

21   "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see*

22   *also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  In other words, "a plaintiff's

23   obligation to provide the grounds of his entitlement to relief requires more than labels and

24   conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

25   550 U.S. at 555 (internal quotations and alterations omitted).  Allegations of fact are taken as true

26   and construed in the light most favorable to the nonmoving party. *See Newdow v. Lefevre*, 598

F.3d 638, 642 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 1612 (Mar. 7, 2011).

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction

Demaray first argues that this Court lacks subject matter jurisdiction over Applied's claims for declaratory relief.  Mot. at 7-16.  Generally, dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) "is a procedural question not unique to patent law," and is therefore governed by regional circuit law.  *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1380 (Fed. Cir. 2002).  However, "[w]hether an actual case or controversy exists so that a district court may entertain an action for declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law."  *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1377 (Fed. Cir. 2012).

The Declaratory Judgment Act states that, "[i]n the case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party in seeking such declaration."  28 U.S.C. § 2201(a).  The phrase "actual controversy" refers to "cases" and "controversies" that are justiciable under Article III of the Constitution.  *Ass'n for Molecular Pathology v. U.S. Pat. & Trademark Off.*, 689 F.3d 1303, 1318 (Fed. Cir. 2012), *rev'd in part on other grounds by Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576 (2013).  Thus, without a case or controversy, there cannot be a claim for declaratory relief.  *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1086 (N.D. Cal. 2013).

The Court has subject matter jurisdiction in a declaratory judgment action when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Under the "all the circumstances" test, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants."  *Id*. at 136.  In case law following *MedImmune*, the Federal

United States District Court
Northern District of California

United States District Court
Northern District of California

Circuit has explained that, in the context of patent disputes, an actual controversy requires "an injury in fact traceable to the patentee," which requires "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Association for Molecular Pathology*, 689 F.3d at 1318.

In order to meet the affirmative act requirement, "more is required than 'a communication from a patent owner to another party, merely identifying its patent and the other's product line.' [But] [h]ow much more is required is determined on a case-by-case analysis." *3M Co.*, 673 F.3d at 1378–79.  On the other end of the spectrum is an explicit infringement allegation, which shows "'there is, necessarily, a case or controversy adequate to support declaratory judgment jurisdiction.'" *See Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009) (quoting *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96, 113 (1993)).  The factual scenarios that fall in between require case-by-case analysis, and the objective actions of the patentee are the subject of that inquiry.  *See 3M Co.*, 673 F.3d at 1379; *Hewlett-Packard Co.*, 587 F.3d at 1363.  The patentee need not explicitly threaten to sue or demand a license, but its actions must give reason to believe that it is asserting its rights under the patents.  *See Hewlett-Packard Co.*, 587 F.3d at 1362–63.

Applied contends that Demaray's suits against Intel and Samsung created an actual controversy under three theories: first, because all of Demaray's affirmative acts as alleged in the complaint have been directed at Applied's products; second, because Demaray's allegations against Applied's customers constituted an implied assertion of direct infringement; and third, because Demaray's allegations against Applied's customers also constituted an implied assertion of indirect infringement against Applied.  Ultimately, a decision must be made as to whether "the totality of the circumstances establishes a justiciable controversy." *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1327 (Fed. Cir. 2014).

    i.   **Controversy Based on Demaray's Affirmative Acts Directed at Applied**

Demaray argues there is no case or controversy between the parties because it is currently

United States District Court
Northern District of California

1   not in a position to determine whether Applied's reactors, standing alone, infringe the Asserted

2   Patents.  Reply iso Mot. at 3.  Applied disagrees, arguing instead that Demaray was aware prior to

3   Applied's current action that Intel and Samsung do not perform any post-installation

4   configurations on their reactors.  As such, Applied contends that Demaray's affirmative acts have

5   been directed specifically at its reactors and not at any actions taken by Intel and Samsung.  Opp'n

6   at 12-13.

7         Before determining whether Demaray has engaged in an affirmative act sufficient to confer

8   jurisdiction over Applied's declaratory judgment claims, the Court addresses which materials and

9   events referenced in Applied's complaint should be used to make this assessment.  As discussed

10  above, Applied filed its operative complaint on December 24, 2020.  It is well-settled that the

11  burden is on the declaratory judgment plaintiff "to establish that such jurisdiction existed at the

12  time the claim for declaratory relief was filed and that it has continued since."  *Benitec Australia,*

13  *Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).  "[L]ater events may not create

14  jurisdiction where none existed at the time of filing" of the complaint.  *GAF Bldg. Materials*

15  *Corp., v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed.Cir.1996) (internal citation omitted).  As

16  such, events which occurred after Applied filed its operative complaint cannot substantiate the

17  existence of  an objective controversy at the time of Applied's filing.  An actual controversy

18  between Applied and Demaray must have existed at the time Applied filed its complaint on

19  December 24, 2020.[3]

20        In analyzing affirmative acts, a court considers numerous factors and looks at the parties'

21  conduct and interactions as a whole.  *See ActiveVideo Networks, Inc.*, 975 F. Supp. 2d at 1087-88;

22  *Akeena Solar, Inc. v. Zep Solar Inc.*, No. C-09-05040-JSW, 2010 WL 519838, at *4 (N.D. Cal.

23  Feb. 9, 2010).  As relevant here, courts consider whether the patent holder took some affirmative

24

25  [3]  In addition to supplemental preliminary infringement contentions served in February 2021,
    Applied also relies on Intel and Samsung discovery responses and statements from discovery
26  hearings post-dating the complaint.  *See* Opp'n at 1, 4, 8, 11-14; *see also* Declaration of Philip Ou
    ("Ou Decl.") Dkt. No. 37-5, Exs. C-D, L.  The timing of these materials renders them irrelevant
27  for purposes of the present motion.

Case No.: 5:20-cv-09341-EJD
28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    DISMISS

1    acts directed at that plaintiff, not just broad and widespread enforcement activity.  *See Ass'n for*

2    *Molecular Pathology*, 653 F.3d at 1344-48; *see also Proofpoint, Inc. v. Innova Pat. Licensing,*

3    *LLC,* No. 5:11-CV-02288-LHK, 2011 WL 4915847, at *2 (N.D. Cal. Oct. 17, 2011) (relying on

4    *Ass'n  for Molecular Pathology* to find no affirmative acts supporting declaratory judgment

5    jurisdiction where there were no allegations that the patent holder "claimed a right to a royalty

6    from [the supplier], sent [the supplier] a cease-and-desist letter, or communicated with [the

7    supplier's] employees").

8         In *3M Co.*, the Federal Circuit found that 3M had proven the existence of a case or

9    controversy because the defendant had "effectively charged" the plaintiff with infringement.  673

10   F.3d at 1379.  The defendant had called 3M, identified a specific product that "[might] infringe,"

11   and mentioned the possibility of licensing.  *Id.*  When 3M declined the licensing offer two days

12   later, the defendant stated that it had performed analysis and would provide claim charts.  *Id.*  The

13   court found these interactions sufficient to establish a case or controversy and noted that the

14   absence of other factors, for example a deadline during licensing discussions, did not alter its

15   conclusion.  *Id.* at 1380.  Although 3M delayed filing suit for over a year, the court found that "the

16   relevant circumstances surrounding [the defendant's] assertion of its patent rights appear to have

17   remain unchanged."  *Id.*  The court was "disinclined to hold that the case or controversy between

18   the parties sufficiently dissipated" during that time.  *Id.*

19         Here, the Court finds that Demaray's affirmative acts are sufficient to establish that there is

20   "a substantial controversy" between the parties that is "of sufficient immediacy and reality to

21   warrant the issuance of a declaratory judgment."  *See MedImmune, Inc.*, 549 U.S. at 127.

22   Although the Court was left searching for a substantial controversy in *Applied I*, Demaray has

23   since sought discovery from Applied as part of its WDTX Customer Cases.  Indeed, on December

24   12, 2020, Demaray served Applied with subpoenas for documents and deposition testimony the

25   configuration of Applied reactors sold to Intel and Samsung.  Compl. ¶¶ 14, 49-50, Exs. F ("Intel

26   Subpoena"), G ("Samsung Subpoena").  The subpoenas were directed at "each Applied reactor

27

United States District Court
Northern District of California

1   supplied to Intel or Samsung with a RMS PVD chamber" and specifically requested documents

2   discussing, for example, "the configuration of the reactor" (Request No. 6); "any filters configured

3   to be used with the power sources" (Request No. 6); "the power sources to the target and the

4   power sources to the substrate" (Request No. 9); "the use of pulsed DC power to the target in

5   RMS PVD chambers in Applied reactors" (Request No. 10); "the use of an RF bias on the

6   substrate and pulsed DC power to the target in RMS PVD chamber in Applied reactors" (Request

7   No. 11); and "the use of a filter with a RMS PVD chamber in Applied reactors with an RF bias on

8   the substrate and pulsed DC power to the target" (Request No. 12), as well as deposition testimony

9   regarding the same. *Id*. Importantly, these hardware components and their "configuration" in the

10  reactors are what Demaray previously argued were configurations made by Intel and Samsung.

11  Compl. ¶ 14.

12         Demaray argues that it only seeks documents from Applied and does not make objective

13  allegations about Applied's reactors. Opp'n at 7. Further, Demaray contends it sought this

14  information from Applied to respond to allegations raised by Intel and Samsung regarding the

15  potential transfer of the WDTX Customer Cases. Yet, Demaray has stated that the discovery

16  sought was necessary "to determine which reactors are in dispute," "[g]iven Applied's

17  involvement in the development, manufacture, assembly and installation of reactors which are

18  then used by Intel/Samsung in an infringing manner." Compl. ¶¶ 15-16, 50., Ex. H. When

19  considered along with Demaray's other affirmative acts, including its October 9, 2020 preliminary

20  infringement contentions, the subpoena requests demonstrate its intent to enforce its patents and

21  the threat of future injury facing Applied.

22         Although Demaray continues to argue that there is not a substantial controversy because it

23  was not in a position to affirmatively assert that Applied's reactors, standing alone, infringe the

24  Asserted Patents, this is merely one factor to be considered in the totality of the circumstances.

25  Moreover, "[t]he test [for declaratory judgment jurisdiction in patent cases], however stated, is

26  objective. . . ." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir.

27  Case No.: 5:20-cv-09341-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
    DISMISS

1   1988).  "Indeed, it is the objective words and actions of the patentee that are controlling."  *BP*

2   *Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 979 (Fed. Cir. 1993); *see also Hewlett-*

3   *Packard Co.*, 587 F.3d at 1362-1363.

4          Viewed in the light most favorable to Applied, Demaray took the affirmative steps of

5   alleging infringement against Applied products such as, creating preliminary infringement

6   contentions which included references to Applied's reactors, refusing to grant Applied a covenant

7   not to sue, requesting discovery from Applied to determine if Applied allegedly infringes the

8   Asserted Patents, and making representations about the need for discovery from Applied to

9   determine which of Intel's and Samsung's reactors allegedly infringe.  Under the totality of

10  circumstances, there is a "definite and concrete" dispute between the two parties regarding

11  Demaray's Asserted Patents which arose and remains active following Applied's declaratory

12  judgment action.

####    ii.    **There Is An Actual Controversy That Applied Might Be Liable for Direct Infringement**

15         The Court also has subject matter jurisdiction over Applied's declaratory judgment action

16  because the claims and initial infringement contentions presented in Demaray's WDTX Customer

17  Cases suggest a substantial direct infringement controversy.  *See* 35 U.S.C. § 271(a).  Pursuant to

18  § 271(a) of the Patent Act, "whoever without authority makes, uses, offers to sell, or sells any

19  patented invention, within the United States or imports into the United States any patented

20  invention during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a).  In the

21  WDTX Customer Cases, Demaray has accused Intel and Samsung of directly infringing

22  configuration and method claims of the Asserted Patents; Demaray alleges that both Intel and

23  Samsung are in violation of § 271(a) of the Patent Act since they have continued "making, using,

24  offering to sell, and selling . . . semiconductor manufacturing equipment including reactive

25  magnetron sputter reactors configured as described in the claims of the '276 patent" and "using the

26  claimed methods for reactive sputtering in an infringing manner to produce semiconductor

United States District Court
Northern District of California

1    products" explained in the '657 patent.  *See* Intel Compl. ¶¶ 22, 47; Samsung Compl. ¶¶ 25, 50.

2        Demaray argues the WDTX Customer Cases are directed only at "particular

3    configurations" made to Applied's reactors and methods used by Intel and Samsung, such that

4    Demaray has not accused Applied's PVD reactors standing alone or Applied of infringement.  *See*

5    Mot. at 8.  However, Demaray has clearly identified Applied's Endura-line reactors as embodying

6    numerous elements of the asserted claims.  With respect to the '276 patent, a review of Demaray's

7    preliminary infringement contentions reveals that Applied's reactors feature prominently in

8    Demaray's infringement allegations at issue in the WDTX Customer Cases.  *See e.g.*, Compl.,

9    Exs. C-D.  Demaray relied in part on Applied's literature and documentation about the Endura-line

10   reactors in every claim limitation other than the narrow band-rejection filter.  *See* Compl. ¶¶ 43-

11   44; *see also generally* Compl., Exs. C-D.  Demaray's infringement contentions also frequently

12   refer to Applied by name, reference material components found in Applied's reactors, and provide

13   screenshots and photographs of Applied's reactors.  For example, Demaray includes images of a

14   "pulsed DC power unit in an Endura reactor configured for RMS deposition" as well as an Endura

15   reactor with "RF bias power supply for RMS deposition."  *See* Compl., Ex. C at 11-13.

16       Since Applied "make[s] the Endura line reactors and "sell[s]" these products to its

17   customers, and Applied has pled that it has also previously performed the allegedly infringing

18   method for research and development and demonstration purposes for its customers, there is a

19   sufficient threat of a claim for direct infringement under 35 U.S.C. § 271 against Applied so as to

20   give rise to an actual controversy.  *See* Compl. ¶¶ 53-54.  Demaray "could just as easily have

21   asserted a claim for direct infringement against [Applied], based on the same underlying

22   circumstances in the customer suit."  *Microsoft Corp. v. GeoTag, Inc.*, No. CV 11-175-RGA, 2014

23   WL 4312167, at *2 (D. Del. Aug. 29, 2014).  Demaray's refusal to offer Applied a covenant not to

24   sue only adds to the possibility of direct infringement claims.  *See* Compl. ¶ 12.  An express

25   accusation by Applied was unnecessary.  *See Arris Grp., Inc. v. Brit. Telecommunications PLC*,

26   639 F.3d 1368, 1379 (Fed. Cir. 2011).  There is a "reasonable potential" of such a suit, and

27
     Case No.: 5:20-cv-09341-EJD
28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

therefore there is subject matter jurisdiction.  *Microsoft Corporation*, 2014 WL 4312167 at *2.[4]

       iii.   **Discretionary Jurisdiction**

Demaray argues that even if there is a case or controversy, the Court should exercise discretion and decline jurisdiction as the customer suits against Intel and Samsung progress in the Western District of Texas.  According to Demaray, it would be proper for the Court to decline jurisdiction to promote judicial efficiency and to avoid gamesmanship.  *See* Mot. at 16 (citing *Proofpoint, Inc.*, 2011 WL 4915847, at *2 (N.D. Cal. Oct. 17, 2011)).  The Court does not agree.  Here, Demaray has engaged in affirmative acts directed at Applied which demonstrates the relationship between the two parties and the Asserted Patents.  *Cf. Proofpoint, Inc.*, 2011 WL 4915847 at * 8 (declining to exercise jurisdiction in part because Proofpoint's complaint was "short on facts explaining its relationship to InNova or the [asserted] patent.").  Given the affirmative acts and the potential impact the resolution of this case could have on Demaray's suits against Applied's customers, the Court finds it appropriate to exercise jurisdiction over Applied's claims for declaratory relief.[5]

**B.**    **Failure to State A Claim**

Demaray also moves to dismiss Applied's licensing and assignment-based claims for

---

[4] Because Demaray's affirmative acts and the potential of an actual controversy based on direct infringement establish that there is subject matter jurisdiction, the Court does not consider whether Applied has established if there is an actual controversy it may be liable for indirect infringement.

[5] Pursuant to Civil Local Rule 7-3(d), Applied filed a Statement of Recent Decision, Dkt. No. 43, ("Applied's SRD") regarding recent orders issued in the WDTX Customer Cases relevant to the motion to dismiss.  Demaray submitted a response, Dkt. No. 44, to which Applied filed an administrative motion to strike or alternatively for leave to file a response.  *See* Dkt. No. 45. Pursuant to Local Rule 7-3(d)(2), "once a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval," except in the form of timely Objections to Reply Evidence or a Statement of Recent Decision.  *See Keller v. Experian Info. Sols., Inc.*, No. 16-CV-04643-LHK, 2017 WL 130285, at *2 n.2 (N.D. Cal. Jan. 13, 2017) (striking post-reply filing, holding "Plaintiff's filing is neither an Objection to Reply Evidence or a Statement of Recent Decision, and Plaintiff did not request the Court's approval prior to filing the Notice of Contrary Case Law.").  Although, neither an Objection to Reply Evidence nor a statement of recent decision, the Court considers Demaray's response.  However, the Court also GRANTS Applied's administrative motion and considers its one-page response to the factual update and argument in Demaray's response.

Case No.: 5:20-cv-09341-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

United States District Court
Northern District of California

1    relief.  According to Demaray, the assignment provisions found in Applied and Applied Komatsu

2    employment contracts violate California Business and Professions Code § 16600.  Section 16600

3    provides that "every contract by which anyone is restrained from engaging in a lawful profession,

4    trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600.

5    Conversely, Applied argues that it is entitled to a declaration of non-infringement based on the

6    license provision granted to it in Applied Komatsu and Symmorphix's SRA.  Opp'n at 20-23.

7    Applied also asserts that the relevant assignment provisions are in fact valid provisions under the

8    law and further justify a declaration of non-infringement.  Opp'n at 23-25.  The Court addresses

9    the arguments in turn.

10                      i.    **Applied's Licensing Claim**

11            Applied first seeks a declaration its reactors cannot infringe because it holds a non-

12   exclusive, perpetual, royalty free license to the Asserted Patents pursuant to the license provision

13   in the SRA.  *See* Compl. ¶ 103.  Specifically, Applied relies on the modified version of Exhibit C

14   attached to the parties' SRA, which states:

15                 "To the extent required by existing [Applied Komatsu] Employee
                   Agreements with any Symmorphix personnel, Symmorphix grants to
16                 [Applied Komatsu] a non-assignable, non-transferable, non-
                   exclusive, perpetual, royalty license to any rights of Symmorphix
17                 under any patent issues based on any patent applications filed for
                   inventions, improvements, or enhancements developed by
18                 Symmorphix relating to sputtered silicon deposition technology,
                   provided that [Applied Komatsu] shall not utilize such rights to
19                 pursue a business of providing Services. . ."

20   Compl. ¶ 74; Ex. K at 3(b).  Demaray argues however that the lead-in language of the licensing

21   provision paragraph dictates that Applied's license is "dependent on the illegal employee

22   assignment" provisions found in the contracts of former Applied and Applied Komatsu

23   employees, and thus not enforceable.  Mot. at 19-20.  Demaray's argument relies primarily on the

24   Court's decision in *Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*,

25   630 F. Supp. 2d 1084 (N.D. Cal. 2009).  In *Applied Materials, Inc.*, the Court considered and held

26   invalid under California Business and Professions Code §16600, an assignment clause which

27

28   ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

provided that:

> In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries.

*Id*. at 1086.  The Court explained that "[a]ssignment clauses function as unlawful non-compete provisions where they require an employee to assign an invention conceived after departing from an employer's service."  *Id*. at 1090.  Applied to the specific assignment provision at issue, the Court observed that it "broadly target[ed] any inventions 'relate[d] to' former employees' 'work'" with the former employer and was "in no way limited" to subject matter based on confidential material.  *Id*. (second alteration in original).  The Court also noted that the provision covered "any invention disclosed by former employees, regardless of when or where they were conceived," so the provision was "overly broad with respect to both subject matter and temporal scope."  *Id*. at 1090–91.

Here, Applied has pleaded that one or more of the named inventors of the Asserted Patents, who left Applied or Applied Komatsu to work at Symmorphix, had the following assignment provisions in their respective employee agreements:

> In case any invention is described in a patent application or is disclosed to third parties by me after terminating my employment with [Applied Komatsu], it is to be presumed that the invention was conceived or made during the period of my employment for [Applied Komatsu], and the invention will be assigned to [Applied Komatsu] as provided by this Agreement, provided it relates to my work with [Applied Komatsu] or any of its subsidiaries.
>
> In case any invention is described in a patent application or is disclosed to third parties by me within one (1) year after terminating my employment with APPLIED, it is to be presumed that the invention was conceived or made during the period of my employment for APPLIED, and the invention will be assigned to APPLIED as provided by this Agreement, provided it relates to my work with APPLIED or any of its subsidiaries.

Compl. ¶¶ 89-90.  Still, Applied argues there is no basis for Demaray to claim that the license grant is dependent on the validity of any assignment provisions found in former Applied or Applied Komatsu employee contracts.  Applied contends instead that the purpose of the lead-in language of the licensing provision was to limit the scope of the license to inventions derived from former Applied Komatsu employees and not from Symmorphix employees who did not come from Applied Komatsu.  Opp'n at 21; Compl. ¶¶ 79-80.  Applied relies on previous negotiations between Applied Komatsu and Symmorphix to release any Applied or Applied Komatsu employees from their post-employment invention assignments as part of the SRA.  Compl. ¶ 73; *see also* Decl. of Ernest Demaray ¶ 6, Dkt. No. 1-13.  SRA's Exhibit C also outlines that Applied Komatsu would not "own and shall not claim any right other than the license grant to [Applied Komatsu detailed in Section 3 of the SRA's Exhibit C] to intellectual property developed by Symmorphix on or after January 1, 1999."  Compl. ¶ 73; *see also* Modified Version of Exhibit C, Dkt. No. 1-11.

Under California law, "'[t]he fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting.'"  *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 989 (9th Cir. 2006) (per curiam) (quoting *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002)).  Further, a court must consider the contract as a whole and interpret its language in context so as to give effect to each provision, rather than interpret contractual language in isolation.  *See Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) ("[C]ontracts must be construed as a whole . . . and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole.") (quoting *Ajax Magnolia One Corp. v. S. Cal. Edison Co.*, 167 Cal. App. 2d 743 (1959) and *Moore v. Wood*, 26 Cal. 2d 621 (1945)).  Here, drawing all reasonable inferences in favor of Applied, the Court finds that Applied has sufficiently pleaded that the SRA granted the company a license related to the Asserted Patents.  Although Demaray's interpretation

United States District Court
Northern District of California

of the lead in language may have been the actual intent of the parties, the lead-in language when considered along with other portions of the SRA and prior negotiations of the parties, leaves doubt as to the parties' intent.  Therefore, the Court must deny Demaray's motion to dismiss.[6]  *See Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986) (finding that where the language "leaves doubt as to the parties' intent," the motion to dismiss must be denied).

In sum, Applied has plausibly stated a claim for a declaration of non-infringement based on a license.

### ii.   **Applied's Assignment of Rights**

Applied also seeks a declaration its reactors cannot infringe because the ownership rights of Mukundan Narasimhan, one of the named co-inventors of the Asserted Parents, were automatically assigned to Applied pursuant to Mr. Narasimhan's assignment obligations.  *See* Compl. ¶ 115.  Applied alleges that Mr. Narasimhan left Applied to join Symmorphix in April of 2001 and that the patent parent application to the Asserted Patents, which named Mr. Narasimhan, was filed in March of 2002.  Compl. ¶¶ 110-112.  Mr. Narasimhan's employee contract with Applied contained the same assignment provision the Court considered in *Applied Materials, Inc.*, which required assignment of "any invention . . . described in a patent application or . . . disclosed . . . within one (1) year after terminating my employment" based on a presumption "that the invention was conceived or made during the period of [the] employment."  630 F. Supp. 2d at 1086; *see also* Compl. ¶ 90.

Although the Court has previously found this assignment provision to be void and unenforceable under §16600, Applied argues it should be enforced in this case for two reasons.  First, Applied asserts that this case is distinguishable from *Applied Materials, Inc.* because there are no restraint of trade or employee mobility concerns since it is only seeking a declaration that it

---

[6] Because the Court finds that the license provision is not dependent on the validity of the assignment provisions found in the contracts of former Applied and Applied Komatsu employees, the question of whether the doctrine of collateral estoppel applies to preclude Applied from re-litigating the legality of its assignment provisions is not at issue when considering the licensing provision.

United States District Court
Northern District of California

1    does not infringe the Asserted Patents by reason of the assignment obligations of its former

2    employees.  The Court does not agree as this argument contradicts Applied's own allegations.

3    Applied seeks this declaration of non-infringement because according to Applied, Mr.

4    Narasimhan's assignment obligations meant that he automatically assigned his ownership rights in

5    the Asserted patents to Applied.  *See* Compl. ¶ 115.  Thus, Applied is seeking to enforce the

6    ownership rights it believes it possesses over the Asserted Patents through the assignment

7    provision.  Moreover, the provision not only extends the assignment provision beyond the length

8    of the employment but also includes broad language sweeping up inventions and discoveries

9    unrelated to Applied proprietary information.  The Ninth Circuit has explained that a "contractual

10   provision imposes a restraint of a substantial character if it significantly or materially impeded a

11   person's lawful profession, trade, or business" and that "it will be the rare contractual restraint

12   whose effect is so insubstantial that it escapes scrutiny under section 16600."  *Golden v.*

13   *California Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024 (9th Cir. 2018).  Given the

14   overly broad nature with respect to both subject matter and temporal scope, the assignment

15   provision at issue here has a restraining effect of a substantial character under the Ninth Circuit's

16   approach.  Applied has failed to present any case which would lead the Court to conclude

17   differently.

18          Second, Applied argues that if the Court were to invalidate the assignment provision to the

19   extent it covers "post-termination inventions" or those conceived "without using Applied's

20   confidential information," the Court should still enforce the assignment provision to include

21   "inventions conceived during employment or with Applied's confidential information."  Opp'n at

22   25.  Applied then asserts that the time in which Mr. Narasimhan left Applied to join Symmorphix

23   and Symmorphix's filing of the Asserted Patents' application, coupled with the overlapping

24   subject matter, demonstrate that Mr. Narasimhan "conceived the inventions during his

25   employment with Applied or that he used confidential information that he had access to at

26   Applied.  *Id*.  In *Applied Materials, Inc.*, the Court also considered a request that the Court

27

28   Case No.: 5:20-cv-09341-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
     DISMISS

United States District Court
Northern District of California

1    narrowly construe the assignment clause in a manner that limited it in scope, including "construing

2    it as merely barring misappropriation of . . . trade secrets." 630 F. Supp. 2d at 1091. The Court

3    declined to do so reasoning that "[e]mployers could insert broad, facially illegal covenants not to

4    compete in their employment contracts." *Id*. "Many, perhaps most, employees would honor these

5    clauses without consulting counsel or challenging the clause in court, thus directly undermining

6    the statutory policy favoring competition. Employers would have no disincentive to use the broad,

7    illegal clauses if permitted to retreat to a narrow, lawful construction in the event of litigation." *Id*.

8    Given these concerns, the Court concluded that it was "not permitted to apply any narrowing

9    construction to limit the application of the Assignment Clause to confidential information or to

10   inventions conceived by former Applied employees during their tenure at Applied." *Id*.

11          Here, Applied relies primarily on cases with differing assignment provisions to the one at

12   issue or to cases that "did not involve the circumstance—an employment agreement with an

13   assignment requirement having a significant restraining effect on a former employee—in which

14   that issue [was] critical." *Whitewater W. Indus., Ltd. v. Alleshouse*, 981 F.3d 1045, 1056-57 (Fed.

15   Cir. 2020) (discussing *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.,*

16   *Inc.*, 583 F.3d 832, 837 (Fed. Cir. 2009) *aff'd on other grounds*, 563 U.S. 776 (2011)). Therefore,

17   Applied offers no basis for concluding that the Court should ignore the Court's prior holding in

18   *Applied Materials, Inc.*

19          Accordingly, the Court finds that the assignment provision found in Mr. Narasimhan's

20   employee contract is void and unenforceable as an unlawful restraint on trade in violation of

21   California Business and Professions Code § 16000. The Court will grant Demaray's motion to

22   dismiss Applied's claim for declaration of non-infringement based on assignment of rights and

23   failure to join all co-owners.

24   **IV.    CONCLUSION**

25          For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Demaray's

26   motion. The Court finds there is subject matter jurisdiction over Applied's declaratory judgment

action. The Court **DENIES** the motion to dismiss Applied's third claim for a declaration of non-infringement based on a license.  Further, the Court **GRANTS** without leave to amend the motion to dismiss Applied's fourth claim for a declaration of non-infringement based on assignment of rights.

**IT IS SO ORDERED.**

Dated: September 16, 2021

EDWARD J. DAVILA
United States District Judge