UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLIED MATERIALS, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>DEMARAY LLC,<br><br>    Defendant. | Case No. 5:20-cv-09341-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT**<br><br>Re: ECF No. 204 |

Plaintiff, Applied Materials, Inc., ("Applied"), brought this suit against Defendant, Demaray LLC ("Demaray"), seeking a declaration of non-infringement of U.S. Patent Nos. 7,381,657 and 7,544,276 (collectively, "Patents-in-Suit"). Compl., ECF No. 1. Demaray countersued for a declaration of validity and infringement of the Patents-in-Suit, and Applied brought a counterclaim for a declaration of invalidity for the same Patents-in-Suit. ECF Nos. 174, 180. Before the Court is Applied's motion for summary judgment of non-infringement. Pl.'s Mot. for Summ. J. (MSJ"), ECF No. 204. Demaray filed an opposition and sur-reply, and Applied filed a reply. Def.'s Opp'n to MSJ ("Opp'n"), ECF No. 255; Pl.'s Reply in Supp. of MSJ ("Reply"), ECF No. 274; Def.'s Sur-Reply to MSJ ("Sur-Reply"), ECF No. 289.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Applied's motion for summary judgment of non-infringement.

Case No.: 5:20-cv-09341-EJD
ORDER GRANTING IN PART AND DEN. IN PART PL.'S MOT. FOR SUMM. J.
1

## I. BACKGROUND

### A. Procedural Background

Applied filed its motion for summary judgment on March 23, 2023. MSJ. Demaray filed its opposition on April 24, 2023. Opp'n. On May 9, 2023, the Court issued its Claim Construction Order. Order on Claim Construction ("Claim Construction"), ECF No. 268. Applied filed its reply on May 22, 2023. Reply. The Court allowed additional briefing by Demaray following the Claim Construction Order, and Demaray filed its sur-reply on June 8, 2023. Sur-Reply; *see also* Order re Additional Briefing, ECF Nos. 284. The Court took this matter under submission on June 9, 2023. ECF No. 291.

### B. Factual Background

The two Patents-in-Suit share the title "Biased Pulse DC Reactive Sputtering of Oxide Films." The '276 Patent claims are apparatus claims and the '657 Patent claims are method claims. Claim Construction 1. The invention here concerns a way to deposit thin films of materials, such as metals, onto a surface, such as a silicon wafer. MSJ, Ex. 5 ("'657 Patent") col. 2:45–62, ECF No. 204-7. Such deposition has uses for producing semiconductor devices and optical devices. *Id.* at col. 1:15–23. It is desirable to precisely control properties of the deposited films, such as the index of refraction, physical and chemical uniformity, low stress, and high density. *Id.* at col. 1:53–2:2. To that end, the Patents-in-Suit present a "sputtering reactor apparatus" that includes a "pulsed DC power supply coupled through a filter to a target and a substrate electrode coupled to an RF [*i.e.*, radio frequency] power supply," with a "substrate mounted on the substrate electrode [that] is therefore supplied with a bias from the RF power supply." *Id.* at col. 2:45–54; MSJ, Ex. 6 ("'276 Patent") col. 2:45–53, ECF No. 204-8.

In its Claim Construction Order, the Court adopted the following construction of "pulsed DC power": "direct current power that oscillates between positive and negative voltages," wherein "oscillates" should have its plain and ordinary meaning. Claim Construction 5. The Court further adopted the parties' undisputed proposed construction of "pulsed DC power supply" as a "supply for providing pulsed DC power." *Id.*

Case No.: 5:20-cv-09341-EJD
ORDER GRANTING IN PART AND DEN. IN PART PL.'S MOT. FOR SUMM. J.
2

1　　　　The accused Cirrus chambers all include both a DC power source and an RF power source
2　for providing power to the target.  Joint Statement of Undisputed Facts ("Undisputed Facts") ¶ 12,
3　ECF No. 204-2.  Demaray contends that Applied's Cirrus chambers infringe on both Patents-in-
4　Suit.  *Id.* ¶ 10.  Applied argues that its Cirrus chambers do not meet all the limitations of the
5　Patents-in-Suits' claims, and that Demaray is precluded from raising its doctrine of equivalents
6　("DOE") theory under prosecutorial estoppel.  *Id.* ¶ 11; MSJ.

## II.　LEGAL STANDARD

　　　　Under Federal Rule of Civil Procedure 56, a court may grant summary judgment only when the moving party shows that there is no genuine dispute of material fact.  A genuine dispute exists if there is sufficient evidence that a reasonable fact finder could decide in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And that dispute is material if it might affect the outcome of the suit.  *Id.*  In determining if a genuine dispute of material fact exists, a court must "tak[e] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).

　　　　The moving party bears the burden of persuading the Court that there is no genuine dispute of material fact, and it also bears the initial burden of producing evidence that demonstrates there is no dispute.  *Cunningham v. Medtronic, Inc.*, 2018 WL 4053446, at *2 (N.D. Cal. Aug. 24, 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When the moving party bears the ultimate burden of persuasion, its initial burden of production is to "establish 'beyond controversy every essential element of'" its claim or defense.  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (citation omitted).  If the moving party satisfies this initial burden, the nonmoving party can nonetheless defeat summary judgment by showing "the evidence, taken as a whole, could lead a rational trier of fact to find in its favor."  *Id.*

## III. DISCUSSION

To establish infringement, a patentee must show that the accused product "meets each claim limitation either literally or under the doctrine of equivalents." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1377 (Fed. Cir. 2005). The Court will address each in turn.

### A. Literal Infringement

Literal infringement requires a showing that each claim element is present. *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 796 (Fed. Cir. 1990). Courts engage in a two-step literal infringement analysis: (1) interpreting the meaning and scope of patent claims through claim construction; and (2) determining whether the claims, as construed, read on the accused product. *Markman v. Westview, Instruments Inc.*, 52 F.3d 967, 976, 979 (Fed. Cir. 1995) (en banc). This Court issued its claim construction ruling on May 9, 2023. Therefore, the Court will proceed to determine whether the product meets each claim as construed in its Claim Construction Order.

Here, there are four relevant claim limitations, which, per the Court's Claim Construction Order, are effectively identical in terms of what they require: '276 Patent claims 1 and 6, and '657 Patent claims 1 and 2, all require "a pulsed DC power supply" that supplies "alternating positive and negative voltages" to the target. Claim Construction 5–6. There are two parts to the limitation, and both must be satisfied for a product to satisfy the limitation. First, there must be a component, "a pulsed DC power supply," which the Court construed to mean a supply providing "direct current power that oscillates between positive and negative voltages." *Id.* at 6. Second, that component must have a certain function, which is to supply "alternating positive and negative voltages" to the target. *Id.*

#### 1. Pulsed DC Power Supply

To reiterate, a pulsed DC power supply is a "supply for providing pulsed DC power." Claim Construction 6–7. Pulsed DC power is "direct current power that oscillates between positive and negative voltages." *Id.* at 6. Therefore, a pulsed DC power supply is necessarily a supply for providing direct current power that oscillates between positive and negative voltages.

Case No.: 5:20-cv-09341-EJD
ORDER GRANTING IN PART AND DEN. IN PART PL.'S MOT. FOR SUMM. J.
4

1   In other words, a pulsed DC power supply depends on whether the power supply itself emits

2   positive and negative voltages; the presence of alternating voltages to the target is a separate part

3   of the limitation and is independent of the requirement of a pulsed DC power supply.

4         There is no genuine dispute that the DC power supplies in the accused Cirrus chambers

5   never provide a positive voltage. *See, e.g.,* MSJ, Ex. 11 ("Pankratz Dep.") 184:6–13 ("The [DC

6   power supply] does not provide an oscillation to the . . . load."), 184:15–185:1 ("The [DC power

7   supply] does not provide a method to oscillate or change the polarity of the voltage between

8   positive and negative."), 185:4–7, 185:17–186:6 ("The [DC power supply] does not have the

9   ability to alternate between positive and negative outputs," or "provide[] DC power that oscillates

10  between positive and negative voltages"), 192:17–193:9 ("There is nothing in the [DC power

11  supply] design that is intended to reverse the voltage."), 209:5–15 ("There is nothing in the design

12  of the [DC power supply] that would intentionally cause a polarity of the voltage."), 210:23-

13  211:14, ECF No. 204-13; *see also* Sur-Reply 1 (arguing only that "the pulsed DC power supplies

14  in the Cirrus chambers provide DC power that, *together with other power in the system*, causes the

15  voltage to the target to oscillate between positive and negative to prevent microarcs") (emphasis

16  added). Thus, the DC power supplies do not provide "direct current power that oscillates between

17  positive and negative voltages," and therefore are not "pulsed DC power supplies" as the Court

18  has construed them.

19        Demaray's arguments to the contrary are unpersuasive. First, Demaray essentially argues

20  that the Court's construction does not require that the pulsed DC power supplies output a positive

21  voltage; rather, a pulsed DC power supply "encompasses arrangements in which the DC power

22  supply *works together* with other elements to provide a positive voltage to the target encompasses

23  systems where the voltage to the target oscillates positive and negative." Sur-Reply 1 (emphasis

24  added). Demaray misinterprets the Court's construction. The presence of alternating voltages to

25  the target is a separate part of the limitation and is independent of the requirement of a pulsed DC

26  power supply providing direct current power that oscillates between positive and negative

27  voltages.

28  Case No.: 5:20-cv-09341-EJD
ORDER GRANTING IN PART AND DEN. IN PART PL.'S MOT. FOR SUMM. J.
5

Second, Demaray argues that the voltage from the DC power supplies may briefly go positive during arc suppression. Opp'n 12. However, even if assumed true, Demaray admits that the brief spike of positive voltage is not generated or emitted by the DC power supplies—rather, the spike is a result of residual power in the system, which includes RF power from the RF power source, after having gone through unspecified interactions with the system. *See e.g.,* Sur-Reply 4 ("[T]he specific voltage to the target is always the result of the combination of the DC and RF power, not one isolated source . . . Regarding hard arcs, the uncontested expert testimony is that when a hard arc event is detected, the pulsed DC power supply quickly and purposefully ceases providing power and shunts its back end to ground, which can cause, together with the other elements of the system, a positive voltage to be supplied to the target."). In no meaningful way can it be said that the DC power supply was the one supplying that positive voltage.

Third, Demaray argues that a "pulse" is simply a rapid change from an operating voltage and back. This is not consistent with the Court's construction, which requires oscillation. *See* Opp'n at 15–16; Claim Construction Order 6.

Therefore, the Court finds that the accused Cirrus chambers do not have "a pulsed DC power supply" and therefore do not infringe on the Patents-in-Suit. The Court **GRANTS** Applied's motion on this ground.

### 2. Alternating Positive and Negative Voltages

Because the Court finds that the family of products do not have a "pulsed DC power supply," Demaray cannot establish literal infringement and the Court will not address the second requirement that component supplies "alternating positive and negative voltages" to the target.

### B. Doctrine of Equivalents

"If a patentee surrenders some scope during prosecution, that territory isn't available later as a doctrine-of-equivalents battleground." *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1145 (Fed. Cir. 2021) (citing *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019)). Scope surrender can occur through a claim amendment or through arguments whereby the prosecution history demonstrates "a clear and unmistakable surrender of

subject matter." *Amgen Inc.*, 931 F.3d at 1159. "An applicant's argument that a prior art reference is distinguishable on a particular ground can serve as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1380 (Fed. Cir. 2021). "Whether prosecution-history estoppel applies is a question of law." *Traxcell Techs*, 15 F.4th at 1145.

Applied argues that, during patent prosecution, the applicants expressly distinguished its patents from Smolanoff, a prior art, by arguing that a "pulsed DC power supply" provided power that oscillated between positive and negative. Therefore, Applied argues that "any DOE theory on the 'pulsed DC power' or 'pulsed DC power supply' requirements must be disregarded as a matter of law because Demaray is estopped from contending that chambers whose power supplies do not provide a positive voltage still infringe." MSJ 21.

Specifically, in distinguishing its patents from Smolanoff during prosecution, the applicants stated:

> Applicants have explicitly defined pulsed DC power to refer to power that oscillates between positive and negative voltages . . . . However, a second definition of 'pulsed DC power' was also in use at the time, and the second definition is apparently the definition utilized in Smolanoff. In this second definition, which is also referred to as unipolar pulsed DC, the DC power supplied to the target is grounded on occasion, either periodically or when an impending discharge is detected. The DC power can be shunted to ground so that the voltage on the target was brought from a high negative voltage to near ground voltage until the arc condition was dissipated, while the negative voltage power supply was protected from the discharge. This process was also referred to as 'pulsed DC power,' but in Smolanoff, the target remains at a negative voltage throughout the deposition.

U.S. Patent Application No. 10/101,863 File History ("Prosecutorial History"), ECF No. 204-10 at 41.

Applied argues that Smolanoff, like Applied's Cirrus chambers, is described as using a negative DC power supply that shuts down and goes to ground (zero) during arcing and does not provide positive voltage output. MSJ 22. Therefore, Demaray is precluded from arguing a DOE theory whereby the "pulsed DC power" or "pulsed DC power supply" limitations are satisfied by a power supply whose voltage never goes from negative to positive. *Id.* at 22–23.

Case No.: 5:20-cv-09341-EJD
ORDER GRANTING IN PART AND DEN. IN PART PL.'S MOT. FOR SUMM. J.
7

Demaray argues that this disclaimer was limited to chamber configurations in which the *target* remains negative, not configurations in which the DC power supply shuts down and goes to zero during arcing and does not provide positive voltage output. Opp'n 21. Even if the Court finds that the DC power supplies never goes positive, Demaray argues that there are "genuine disputes of fact regarding whether the voltage to the target in the Cirrus family of reactors alternates between positive and negative voltages" with the combined DC/RF power supplies. *Id.* at 2.

When drawing all inferences in the light most favorable to Demaray, the Court finds that the applicants' highlighted arguments could be reasonably interpreted as distinguishing the prior art based on the target voltage, not the output of the DC power supply. *See Torres*, 648 F.3d at 1123 (9th Cir. 2011). While the applicants do describe Smolanoff's DC power supply as providing only negative voltage, a closer examination at the last sentence of the paragraph shows that the distinguishing feature may be, unlike in the patented product, Smolanoff's target remaining at a negative voltage: "This process was also referred to as 'pulsed DC power,' **but in Smolanoff, the target remains at a negative voltage throughout the deposition**." Prosecutorial History, ECF No. 204-10 at 41 (emphasis added). As the Court established above, the DC power supplies here never go positive; however, there are genuine disputes regarding whether voltage in the chambers ultimately goes positive with the combined DC/RF power supplies. Regardless of whether, as Applied contends, the claim elements at issue here do not focus on the target, the language quoted above could be reasonably interpreted to focus on the voltages to the target, such that Demaray is not estopped from alleging DOE theories based on the output voltages.

Therefore, because the arguments at prosecution could be interpreted to distinguish the prior art based on voltages to the target rather than output voltages, the Court finds that Applied has failed to show how the prosecution history demonstrates "a clear and unmistakable surrender of subject matter." *Amgen Inc.*, 931 F.3d at 1159. The Court **DENIES** Applied's motion for summary judgment on this ground.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Applied's motion for summary judgment. The Court finds that there are no genuine disputes that Applied's products do not literally infringe on the Patents-in-Suit, but Applied has failed to show that prosecutorial estoppel precludes Demaray from asserting infringement under DOE.

**IT IS SO ORDERED.**

Dated: January 2, 2024

EDWARD J. DAVILA
United States District Judge