1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

APPLIED MATERIALS, INC.,

Plaintiff,

v.

DEMARAY LLC,

Defendant.

Case No.   20-cv-09341-EJD

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF Nos. 431, 452

Plaintiff and Counterclaim Defendant Applied Materials, Inc. ("Applied") has moved for summary judgment that Applied's Cirrus and Avenir Chambers (the "Accused Chambers") do not infringe U.S. Patent Nos. 7,544,276 ("'276 Patent") and 7,381,657 ("'657 Patent") (together, the "Asserted Patents") based on claim and issue preclusion. Applied's Motion for Summary Judgment ("Applied MSJ"), ECF No. 431. Defendant and Counterclaim Plaintiff Demaray LLC ("Demaray") opposes the motion and has moved for summary judgment that preclusion does not apply. Demaray's Opposition to Applied's Motion for Summary Judgment and Cross-Motion for Summary Judgment ("Demaray MSJ"), ECF No. 452.[1] Both motions are fully briefed. Applied's

---

[1] The Court reminds the parties to review and adhere to this Court's Standing Order for Civil Cases. Both parties' briefs violate this Court's instruction regarding footnotes. Any non-compliant footnotes in future filings may be stricken. *See* Standing Order for Civil Cases, Section IV(A)(4).

Case No.: 20-cv-09341-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT

1  Reply in Support of Motion for Summary Judgment ("Applied Reply"), ECF No. 461; Demaray's

2  Reply in Support of Motion for Summary Judgment ("Demaray Reply"), ECF No. 467.

3       Having carefully reviewed the relevant documents, the Court finds this matter suitable for

4  decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons stated below,

5  the Court GRANTS IN PART Applied's Motion and GRANTS IN PART Demaray's Motion.

6  **I.      BACKGROUND**

7       The facts of this case have been set forth in prior Orders and in the parties' briefs.  Only

8  those facts and issues necessary to resolve the pending motions are discussed below.  Additional

9  facts are identified in Section III.

10       **A.      The Texas Action**

11       On July 14, 2020, Demaray sued Samsung Electronics Co., Ltd. ("Samsung") in the

12  Western District of Texas for its allegedly infringing use of Samsung's reactive magnetron

13  sputtering ("RMS") reactors.  *See Demaray LLC v. Samsung Elec. Co., Ltd.*, No. 6:20-cv-00636

14  (W.D. Tex.), ECF No. 1 (the "Texas action").  In that suit, Demaray alleged that the RMS reactors

15  Samsung received from Applied infringed the same patents asserted in the present case—the '276

16  Patent and the '657 Patent.  *Id.* ¶ 28.  Demaray accused two families of chambers: Cirrus and

17  Avenir.  Demaray brought claims under 35 U.S.C. §§ 271(a), (f).  For Cirrus chambers, only

18  § 271(f) was at issue.  For Avenir, § 271(a) was at issue for a subset of chambers.  Although it is

19  not clear based on the parties' arguments and the record, it appears that § 271(a) was also at issue

20  for the remaining accused Avenir chambers.  Applied was not a party to the Texas action.

21       In February 2024, the Texas action proceeded to a five-day jury trial.  The jury returned a

22  verdict for Samsung, finding that the accused Cirrus and Avenir chambers do not infringe the

23  Asserted Patents either literally or under the doctrine of equivalents ("DOE").  Jury Verdict Form,

24  ECF No. 526.  The verdict form had four infringement sub-questions.  The first asked: "For the

25  Cirrus chambers, has Demaray proven by a preponderance of the evidence that Samsung literally

26  infringed the following patent claims?  Check 'Yes' (for Demaray) or 'No' (for Samsung)."  *Id.* at

27  2.  The second was the same but specified under the doctrine of equivalents.  The third and fourth

28  Case No.: 20-cv-09341-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT

were in the same form, but "For the Avenir chambers." *Id.* at 4. The form also had validity and damages questions. The jury checked "No" for infringement of each claim and did not mark any other questions. *Id.* at 2–4.

### B.    The Present Action

On December 24, 2020, Applied filed a lawsuit in this district seeking a declaratory judgment that Applied's reactors "do not directly or indirectly infringe any claim" of the Asserted Patents. Complaint, ECF No. 1 ¶¶ 95, 100. Demaray responded by asserting counterclaims against Applied for infringement of the Asserted Patents. Demaray's Amended Answer and Counterclaims ("Demaray's Answer and Counterclaims"), ECF No. 174. Demaray's counterclaims carved out any reactors Applied sold to Samsung. *See id.* ¶¶ 49, 78 ("for the avoidance of doubt, [Demaray] does not seek to recover, in this litigation, either (a) damages to compensate Demaray for Intel's and Samsung's use of the Applied reactors, which damages are at issue in the Texas litigations, or (b) damages to compensate Demaray for Applied's infringing activities with respect to reactors sold or provided to Intel and Samsung, as Demaray has elected to seek damages instead against Intel and Samsung in the Texas litigations").

## II.    LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the court draws all reasonable factual inferences in favor of the

1    non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility

2    determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

3    facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony

4    does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See*

5    *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

6          Whether claim or issue preclusion applies is a mixed question of law and fact. *Springs v.*

7    *First National Bank of Cut Bank*, 835 F.2d 1293, 1295 (9th Cir. 1988). The Federal Circuit

8    applies "the law of the regional circuit to the general procedural question of whether issue

9    preclusion applies." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778

10   F.3d 1311, 1314 (Fed. Cir. 2015). "However, for any aspects that may have special or unique

11   application to patent cases, Federal Circuit precedent is applicable." *Aspex Eyewear, Inc. v. Zenni*

12   *Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013). That includes "issues of issue preclusion that

13   implicate substantive patent law issues, or issues of issue preclusion that implicate the scope of

14   [the Federal Circuit's] own previous decisions." *Soverain Software*, 778 F.3d at 1314.

## III.    DISCUSSION

16         Applied contends that Demaray is precluded under both claim and issue preclusion from

17   relitigating whether the Accused Chambers infringe the Asserted Patents. Demaray responds that

18   neither form of preclusion applies. The Court addresses both below.

19        **A.    Claim Preclusion**

20         Applied argues claim preclusion applies because Demaray already sued Samsung on

21   "identical claims" in Texas and lost. Applied MSJ 8. In the Ninth Circuit, claim preclusion

22   applies where the prior suit: (1) reached a final judgment on the merits; (2) involved identical

23   parties or privies; and (3) involved the same claim or cause of action. *Mpoyo v. Litton Electro-*

24   *Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quotations omitted). "Whether two claims of

25   infringement constitute the same claim or cause of action is an issue particular to patent law" to

26   which Federal Circuit law applies. *Brain Life, LLC v. Elekta Inc.*, 746 F.3d 1045, 1052 (Fed. Cir.

27   2014).

28   Case No.: 20-cv-09341-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

The parties do not dispute that the jury in the Texas action reached a final judgment on the merits. Because the Court finds that privity does not exist, it declines to evaluate whether the Texas action involved the same claim or cause of action for purposes of claim preclusion. *See F.T.C. v. Garvey*, 383 F.3d 891, 897 (9th Cir. 2004) ("Because we find that privity does not exist, we decline to discuss identity of claims").

In the Ninth Circuit, "privity may exist . . . when there is sufficient commonality of interest" between the parties. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) (internal quotation and citation omitted). That is, privity exists when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action. *See Shaw v. Hahn*, 56 F.3d 1128, 1131–32 (9th Cir. 1995).

Although it was not a party to the Texas action, Applied argues it was in privity with Samsung for claim preclusion purposes based on two grounds: (1) Applied owes indemnity to Samsung pursuant to an indemnification agreement between the parties, and (2) the "whole trial" in the Texas action revolved around Applied's products. Applied MSJ 11 (citing Samsung/Applied Materials General Terms and Conditions (the "Indemnification Agreement")).

Demaray responds that Applied has not established privity because (1) Applied refused discovery into any indemnification relationship, (2) Applied consistently made arguments that undermine its current position, and (3) the sole supporting document Applied relies on—the Indemnification Agreement—shows only a partial obligation to indemnify limited to claims related to the "Equipment" Samsung purchased from Applied. Demaray MSJ 17–21.

For the reasons stated below, Applied has not shown that it is in privity with Samsung such that claim preclusion will apply.

### 1. Indemnification Agreement

Applied first argues that the indemnitor-indemnitee relationship is sufficient to find privity between Applied and Samsung. The Indemnification Agreement provides that Applied "agrees to defend, indemnify, and hold [Samsung] harmless against any claims that the Equipments or any

products [Samsung] manufactures by using such Equipments infringe upon or violate any patent." Indemnification Agreement § 15. In addition to the requirement that Applied pay if Samsung lost the Texas action, the Indemnification Agreement also gave Applied "the right to make the defense and settlement of any [] claim." *Id.* Indeed, Applied insists it exercised that control in the Texas action because "Samsung deferred to Applied" "regarding litigation strategy." Applied MSJ 11.

The Ninth Circuit in *Garvey* considered an indemnitor-indemnitee relationship when analyzing privity for preclusion purposes. *Garvey* involved claims by the FTC for the marketing of a weight loss system sold by Enforma. *Id.* at 895. Enforma hired Modern Media, a subsidiary of Modern Interactive, to prepare infomercials for the weight loss system, and it hired Steven Patrick Garvey to star in the infomercials. The FTC initially brought claims against Enforma and two of the company's executives for deceptive acts and misleading advertising in violation of Sections 5(a) and 12 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45(a), 52. The district court entered a stipulated settlement binding Enforma and the company's CEO, which prohibited certain conduct and required payment to the FTC. *Id.* at 856. Soon after, the FTC filed a separate complaint against Mr. Garvey, Modern Interactive, and the media company's executives (together, with Modern Interactive, "the Modern Interactive defendants") for violating the same sections of the FTCA. The district court granted summary judgment in favor of the Modern Interactive defendants, finding that the prior settlement barred the present claims by res judicata, also known as claim preclusion.

On appeal, the Ninth Circuit reversed the res judicata finding because the parties to the first action "were not sufficiently connected" to the parties in the second action "to justify barring the FTC's claims." *Id.* at 898. The Ninth Circuit found there was "no indication that the defendants in the [first] action were acting on behalf of" the defendants in the second action. *Id.* Relevant to the present case, the Ninth Circuit acknowledged the "complicating factual issue" that the prior defendant, Enforma, had agreed to indemnify the later defendants. The Court noted that "[r]es judicata may bar a claim brought against an indemnitee where the same claim has already been pursued against the indemnitor." *Id.* But *Garvey* explained that the preclusive effect of an

1    indemnitor-indemnitee relationship "only makes sense when the indemnitor is, in the first action,

2    acting *in its capacity as indemnitor*." *Id.* (emphasis in original).  Although Enforma was

3    "technically an indemnitor," there was "no indication that [Enforma] was acting in this role in the

4    first lawsuit." *Id.*  Rather, Enforma "was being pursued directly for its own actions." *Id.*  The

5    Ninth Circuit thus concluded that the indemnification agreement did not establish privity for res

6    judicata purposes.  It held that "[i]f the indemnitor is sued for its own actions and is not sued as an

7    indemnitor for the acts of another, the rationale favoring preclusion no longer holds." *Id.*

8        The present procedural posture is slightly different.  Here, the indemnitor (Applied) seeks

9    to invoke claim preclusion based on a ruling in favor of its indemnitee (Samsung).  In *Garvey*, the

10   reverse was true: the indemnitee sought to invoke claim preclusion based on an agreement binding

11   the indemnitor.  Despite that difference, the general principle stated in *Garvey* applies here—the

12   rationale favoring preclusion no longer holds when the indemnitor is sued for its "own actions"

13   and is not sued as an indemnitor for the acts of another.  Put another way, an indemnification

14   agreement does not establish privity for preclusion purposes absent facts demonstrating that the

15   indemnitor is acting in its capacity as indemnitor.  *Id.*; *see also Josephs ex rel. Est. of Leibrock-

16   Josephs v. Gallatin Cnty.*, 385 F. App'x 671, 673 (9th Cir. 2010) ("while an indemnitor-

17   indemnitee relationship can provide privity, it only does so when the indemnitor is sued as the

18   indemnitor of the indemnitee in the prior litigation, and not for his own actions").

19       Thus, Samsung and Applied's indemnitee-indemnitor relationship would only establish

20   privity and have a preclusive effect if Applied, as indemnitor, was sued in the present case in its

21   capacity as indemnitor to Samsung.  The relationship would not establish privity and have no

22   preclusive effect if Applied was sued directly for "its own actions."  To show that Applied was

23   acting in its role as an indemnitor in the Texas action, Applied points to trial testimony confirming

24   that "Applied is actually [partially] indemnifying Samsung," which means that Applied "is

25   actually paying, or at least partially, for Samsung's liability" in the Texas action.  *See Demaray*

26   *LLC v. Samsung Elec. Co., Ltd.*, No. 6:20-cv-00636 (W.D. Tex.), Trial Transcript ("Trial Tr.") at

27   741:22–742:4; *see also id.* at 743:12–15 ("Q: And you would agree that if Applied has to pay if

28   Case No.: 20-cv-09341-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Samsung loses, then Applied by definition has a stake in this matter, right? A. Yes").  The cited

2    trial testimony simply underscores the undisputed fact that Applied was indemnifying Samsung in

3    the *Texas action*.  It does not inform whether Applied is acting in its capacity as indemnitor of

4    Samsung in the *present case*.

5         Following *Garvey*, the Court declines to find that the Indemnification Agreement alone

6    establishes privity between Samsung and Applied for claim preclusion purposes.[2]  Demaray

7    brought counterclaims against Applied in this case for Applied's own actions—not for Applied's

8    actions as an indemnitor for the acts of Samsung.  Nor is there any evidence that Applied is acting

9    *in this case* in its capacity as indemnitor to Samsung.  To be sure, under *Garvey*, Demaray would

10   be precluded from suing based on Applied's conduct within the scope of the Indemnification

11   Agreement.  But Demaray's counterclaims explicitly carve out any damages to compensate

12   Demaray for (1) Samsung's use of the Applied reactors, and (2) Applied's infringing activities

13   with respect to reactors sold or provided to Samsung.  Demaray's Answer and Counterclaims

14   ¶¶ 49, 78.  As pled, Demaray's counterclaims seek relief based on Applied's own actions, not

15   Applied's actions as indemnitor.

16        Moreover, Samsung was represented in the Texas action by the same counsel who

17   currently represents Applied.  Thus, there is evidence that Samsung knew Demaray was pursuing

18   Applied during the pendency of the Texas action.  This supports the conclusion that Samsung was

19   not acting on behalf of Applied (or vice versa) because both parties understood Applied was

20   involved in a separate case pending in the Northern District of California.  *See Garvey*, 383 F.3d at

21   898 (conclusion that first defendant not acting on behalf of second defendant in first lawsuit

22   supported where first defendant "knew that the FTC was pursuing and intended to continue

23   pursuing other defendants").  Given the overlapping counsel and Applied's prior statements

24

25   [2] Applied argues that this case is more akin to *SpeedTrack, Inc. v. Off. Depot, Inc.*, 2014 WL
     1813292 (N.D. Cal. May 6, 2014), *aff'd*, 791 F.3d 1317 (Fed. Cir. 2015).  Applied Reply 9.  The
26   Court does not find *SpeedTrack* persuasive because, although post-dating *Garvey*, it evaluated the
     indemnitor-indemnitee relationship under Minnesota authority.  *Id.* ("Neither party has presented
27   Ninth Circuit authority on the issue of whether an indemnification agreement is sufficient to meet
     the 'privity' requirement, but defendants do cite one out-of-district case with similar facts.").

28   Case No.: 20-cv-09341-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT

1  emphasizing differences between this case and the Texas action, "applying res judicata here would

2  likely reward gamesmanship by [Applied]." *Id.* at 900.

3           **2.    Applied's Products in the Texas action**

4           Separate from the Indemnification Agreement, Applied also argues privity between it and

5  Samsung exists because only *Applied's* Cirrus and Avenir chambers were accused of

6  infringement.  Applied MSJ 11–12.  But Applied's status as a supplier of the accused products

7  does not establish privity between it and Samsung—the purchaser and user of the accused

8  products.  *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1306 (Fed. Cir. 2007) ("a

9  manufacturer or seller of a product who is sued for patent infringement typically is not in privity

10 with a party, otherwise unrelated, who does no more than purchase and use the product").  Nor has

11 Applied shown that complete overlap in accused products is sufficient to establish privity.

12                                        * * *

13          In sum, the Indemnification Agreement does not establish the necessary privity between

14 Samsung and Applied for claim preclusion to apply.  Nor has Applied shown that there is

15 otherwise sufficient commonality of interest between it and Samsung.  Thus, claim preclusion

16 does not bar Demaray's claims in this case.

17     **B.    Issue Preclusion**

18          Applied next argues that the issue of whether the Applied Cirrus and Avenir chambers

19 infringe the '276 and '657 Patents has already been decided in the Texas action, and Demaray

20 should be precluded from relitigating that "issue" against Applied.

21          Issue preclusion, also known as collateral estoppel, "is designed to bar[] successive

22 litigation of an issue of fact or law actually litigated and resolved in a valid court determination."

23 *Paulo v. Holder*, 669 F.3d 911, 918 (9th Cir. 2011) (alteration in original; internal quotation marks

24 omitted).  "The party asserting issue preclusion must demonstrate: (1) the issue at stake was

25 identical in both proceedings; (2) the issue was actually litigated and decided in the prior

26 proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was

27 necessary to decide the merits."  *See Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir.

28 Case No.: 20-cv-09341-EJD
   ORDER ON MOTIONS FOR SUMMARY JUDGMENT

1   2017) (internal quotation marks omitted).

2       The parties do not dispute that Demaray had a full and fair opportunity to litigate the issue.

3   The Court turns to the remaining elements below.

4       **1.    Whether the Issues in Both Actions Are Identical**

5       As stated above, Applied frames the relevant "issue" as follows: whether Applied's Cirrus

6   and Avenir chambers infringe the Asserted Patents.  Applied MSJ 12.  In opposing Applied's

7   request for issue preclusion, Demaray relies heavily on its discussion in the context of *claim*

8   preclusion.  *See* Demaray MSJ 22; Demaray Reply 13 ("The reasons Demaray explained as to why

9   the claims are not the same between the two cases … therefore show the issues, too, are not the

10  same").  Demaray argues that, although the cases share the same Asserted Patents, the issues are

11  nevertheless not the same in the context of preclusion because of different accused activity,

12  different transactional facts, and different claim constructions.

13      The Federal Circuit applies its own "precedent to questions involving substantive issues of

14  patent law, issues of issue preclusion that implicate substantive patent law issues, or issues of issue

15  preclusion that implicate the scope of [the Federal Circuit's] own previous decisions."  *Wis.*

16  *Alumni Rsch. Found. v. Apple Inc.*, 112 F.4th 1364, 1378 (Fed. Cir. 2024) ("*WARF*") (quoting

17  *Soverain Software*, 778 F.3d at 1314).  Issue preclusion may apply and bar a second litigation,

18  even where the products are different from the first litigation, under "limited circumstances where

19  it is shown that a close identity exists between the relevant features of the accused device and the

20  device previously determined to be non-infringing such that they are essentially the same."  *Id.*

21  (quoting *ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir.

22  2018)).  Accused devices are essentially the same where the differences between them are "merely

23  colorable or unrelated to the limitations in the claim of the patent."  *Id.* (citation omitted).

24      ***Accused devices***.  First, Demaray argues that there is "no overlap" in the accused chambers

25  in this case with those in the Texas action because it explicitly carved out in this case all products

26  Applied has sold to Samsung.  Demaray MSJ 11.  This argument is unpersuasive because Applied

27  has shown that the two sets of chambers are, at a minimum, "essentially the same."  *See WARF*,

28

United States District Court
Northern District of California

1    112 F.4th at 1379.  Demaray does not dispute the two "families" of chambers in both cases were

2    the same, and the fact that there were fewer chambers within the same family at issue does not

3    defeat preclusion.

4          *Theories of infringement*.  Demaray next contends that the issues are not identical to any

5    issues actually litigated because the theories of infringement in both cases are different.

6    According to Demaray, the Texas action focused on whether Samsung's actions infringed

7    Demaray's patents under 35 U.S.C. § 271(f), and the current action is focused on whether

8    Applied's activities infringe the same patents primarily under 35 U.S.C. § 271(a).  Demaray

9    argues that it does not need to prove any elements of § 271(f) to prevail in its claims against

10   Applied under § 271(a).  Demaray MSJ 12.  As in *WARF*, Demaray's argument reveals a

11   difference between Demaray's and Applied's articulation of "the issue"—namely, "whether the

12   issue is infringement or the separate theories of infringement."  *WARF*, 112 F.4th at 1381.

13         In *WARF*, the party opposing issue preclusion argued that literal infringement (the issue in

14   the first lawsuit) and the doctrine of equivalents (the issue in the later lawsuit) were different

15   issues for preclusion purposes because they "have different tests."  *Id.* at 1381.  The Federal

16   Circuit rejected that approach, finding that "different tests" did not necessarily amount to

17   "different issues."  Instead, in resolving the question of whether the issues were the same, *WARF*

18   followed the Supreme Court's approach in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S.

19   138 (2015).  *Id.* at 1381–82 (explaining that *B&B Hardware* "looked to the statutes, the history,

20   and the Restatement (Second) of Judgments" to determine whether the issues were the same).

21   First, regarding the relevant statutes, the court explained that there is only one statute[3] governing

22   patent infringement, 35 U.S.C. § 271, and section 271(a) "covers both literal infringement and the

23   doctrine of equivalents."  *Id.* ("we are not dealing with two statutes, just one describing liability

24   for all direct infringement").

25

26

27   [3] The court did observe that "[o]ther sections of § 271 provide the basis for other types of
     infringement not at issue here, such as induced and contributory infringement."  *WARF*, 112 F.4th
     at 1382, n.11 (citing 35 U.S.C. § 271(b)–(c)).

28   Case No.: 20-cv-09341-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT
                                      11

Next, turning to the relevant historical context, *WARF* explained that the Supreme Court has consistently treated infringement, either literal or doctrine of equivalents, as a single issue. *Id.* (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) and *Winans v. Denmead*, 56 U.S. 330, 344 (1853)). Finally, the Federal Circuit referred to the Restatement's guidance in defining the "issue" for purposes of issue preclusion. *Id.* at 1383. The treatise offers several factors to consider, including whether there is substantial overlap between the evidence or argument, whether the new evidence or argument involves application of the same rule of law, and whether pretrial preparation and discovery relating to the matter presented in the first action reasonably could be expected to have embraced the matter in the second. Evaluating these factors, the court explained that the evidence would be substantially the same between literal infringement and the doctrine of equivalents because "it will always boil down to the patent claim, the accused product (or method), and a comparison of the two." *Id.* In sum, the Federal Circuit held that that "literal infringement and the doctrine of equivalents are the same issue for issue-preclusion purposes." *Id.* at 1384.

The Federal Circuit also considered preclusion in the context of claims under different sections of the patent statute in *Inguran, LLC v. ABS Glob., Inc.*, 72 F.4th 1272 (Fed. Cir. 2023). *Inguran* held that an inducement infringement claim brought in a later suit was not precluded by a direct infringement claim brought in an earlier suit "because the claims [were] not based on the same transactional facts." *Id.* at 1279. In so holding, the court explained that the accused activity and transactional facts differed, including because the evidence needed "to support a claim for direct infringement [] is different from the evidence required to sustain a claim of induced infringement by third parties." *Id.* (noting that patentee "would need *additional* facts to plausibly allege an induced infringement claim").

Here, the relevant two theories of infringement are §§ 271(a) and 271(f).[4] Section 271(a) provides that "whoever without authority makes, uses, offers to sell, or sells any patented

---

[4] The Court addresses Demaray's claim under § 271(a) as to the subset of Avenir chambers in the Texas action later in this section.

1    invention, within the United States or imports into the United States any patented invention during

2    the term of the patent therefor, infringes the patent."  This is the statutory basis for direct

3    infringement, which covers both literal infringement and the doctrine of equivalents.  Section

4    271(f), by contrast, imposes indirect infringement liability for exporting domestically supplied

5    components of a patented invention under certain circumstances.  It does not depend on a separate

6    act of direct infringement.  *See Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed.

7    Cir. 2001) ("Admittedly, infringement without a completed infringing embodiment is not the norm

8    in patent law, but it is reasonable in the context of 271(f)(2)").  Like *WARF*, we are dealing with

9    one statute—§ 271.  Unlike *WARF*, we are dealing with two separate sections of the same statute;

10   one that describes liability for direct infringement, and one that describes liability for indirect

11   infringement.  *See Zoltek Corp. v. United States*, 672 F.3d 1309, 1327 (Fed. Cir. 2012) (observing

12   in dicta that §§ 271(b), (c), and (f) involve indirect infringement).

13        The Court is not convinced that, at least under the facts of this case, direct infringement

14   under § 271(a) and indirect infringement under § 271(f) should be treated as the same issue for

15   issue-preclusion purposes under *WARF*'s three-step framework.  First, as noted above, the sections

16   are separate and cover different types of infringement.  While "minor variations in the application

17   of what is in essence the same legal standard do not defeat preclusion," the two sections here do

18   not involve "the same legal standard."  *WARF*, 112 F.4th at 1381 (quoting *B&B Hardware*, 575

19   U.S. at 154).  Section 271(f) has unique requirements not present in section 271(a), including that

20   the accused infringer "supplies or causes to be supplied" components in a manner "to actively

21   induce the combination" of the components outside the United States (§ 271(f)(1)), or that the

22   accused infringer had knowledge that the component is so made and had intent that the component

23   would be combined outside the United States (§ 271(f)(1)).

24        Second, the Court is unaware of any historical treatment of infringement under §§ 271(a)

25   and 271(f) as a "single issue."  *C.f. WARF*, 112 F.4th at 1382 (citing precedent treating DOE and

26   literal infringement as a "single issue").

27        Third, although there is certainly *some* overlap between the evidence and argument in both

United States District Court
Northern District of California

1    cases, the Court finds the overlap is not substantial enough such that the issues should be treated

2    as the same.  Unlike literal infringement and DOE infringement theories, where the evidence

3    "must necessarily be substantially the same because the [DOE] is intended to cover *unimportant*

4    *and insubstantial changes* and substitutions in the patent which, though *adding nothing*, would be

5    enough to take the copied matter outside the claim" (*WARF*, 112 F.4th at 1383 (emphasis in

6    original)), evidence and argument pertaining to §§ 271(a) and 271(f) would differ in meaningful

7    respects.  For example, evidence and argument relating to extraterritoriality and exportation, and

8    the extent to which Samsung knew of and controlled these activities were central to finding

9    liability under § 271(f) in the Texas action.  No such evidence or argument would be required in

10   the present action pertaining to § 271(a) liability against Applied.

11        Similarly, the transactional facts in the Texas action in large part revolved around

12   Samsung's activities.  There, the issues related to whether Samsung "supplie[d] or cause[d] to be

13   supplied in or from the United States" at least a substantial portion of the components of a

14   patented invention "in such a manner as to actively induce the combination of such components

15   outside of the United States" (§ 271(f)(1)) and whether Samsung had "know[ledge] that such

16   component is so made or adapted and inten[t] that such component will be combined outside of

17   the United States" (§ 271 (f)(2)).  Indeed, although Applied now argues that the extent of

18   Demaray's theories under § 271(f) were cabined to "a couple lines of testimony during a five-day

19   trial" (*see* Applied Reply 7), Samsung's counsel argued at trial that "Demaray's sole infringement

20   theory" was under § 271(f), which related to "Samsung's entirely foreign use of these chambers."

21   Trial Tr. at 675:21–676:8.  Demaray could not have brought claims against Samsung's activities in

22   Korea under § 271(a).

23        Although neither case considered preclusion in the specific context of claims under

24   §§ 271(a) and 271(f), the Court's conclusion is consistent with preclusion principles stated *WARF*

25   and *Inguran*.[5]  Applied argues that *Inguran*'s preclusion holding should not apply here because the

26

27   [5] Applied cites what it argues is "binding case law" which "confirms that the legal theory a
     plaintiff brings is irrelevant for claim preclusion purposes—as long as their claims arise from the

28   Case No.: 20-cv-09341-EJD
     ORDER ON MOTIONS FOR SUMMARY JUDGMENT
                                          14

Federal Circuit relied on the fact that the patentee in that case only later learned about the third parties in the second suit. Applied Reply 7. The Court does not read *Inguran*'s holding so narrowly. While the Federal Circuit did note that the patentee "could not have asserted an inducement claim" during the first lawsuit, the court still concluded that the transactional facts between the two suits differed because the two theories on infringement involved different evidence. *Inguran*, 72 F.4th at 1279 ("the evidence that [patentee] needs to support a claim for direct infringement by ABS is different from the evidence required to sustain a claim of induced infringement by third parties"); *see also Gammino v. Am. Tel. & Tel. Co.*, No. CV 12-666-LPS, 2013 WL 6154569, at *2 (D. Del. Nov. 22, 2013) (finding without explanation that direct infringement claim not barred by claim preclusion where "Plaintiff's dismissed indirect infringement cause of action arises under 35 U.S.C. § 271(b), while Plaintiff's remaining direct infringement cause of action arises under a different statute, namely 35 U.S.C. § 271(a)"). *Inguran*'s holding thus remains persuasive.

In sum, the Court concludes that the issue actually litigated in the Texas action was not "identical" to the issue in the present action because of the different subsections of § 271 Demaray relies on in each case. However, this conclusion applies only for the Cirrus chambers, for which it is undisputed that only § 271(f) was at issue in the Texas action.[6] Applied argues that Demaray "very clearly went after Samsung's use of the Avenir chambers in the United States, which necessarily means it made § 271(a) arguments at trial." Applied Reply 6 (citing trial transcript). For those Avenir chambers where § 271(a) was at issue, Demaray argues that issue preclusion still

---

same set of facts in both suits." Applied Reply 6. The Court does not find the cited cases binding on these facts because all predate *WARF* and otherwise do not analyze preclusion under the circumstances here. For example, *In re PersonalWeb Technologies* involved different infringement theories and arguments under 271(a)—it did not consider different infringement theories based on separate sections of the patent statute. *In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1376 (Fed. Cir. 2020).

[6] Demaray points out that Samsung's infringement for making products using a patented process outside the United States and importing those products under 35 U.S.C. § 271(g) was also at issue in the Texas action. *See* Demaray MSJ 11, n. 4. Applied does not address this issue. The Court finds that Applied has not established preclusion applies with respect to claims brought under § 271(g) because there are no claims against Applied for making products using a patented process under that section.

Case No.: 20-cv-09341-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

does not apply to Avenir "because the issues were not the same between the cases," including "due to the different claim constructions." Demaray Reply 14, n. 3. Because the Court's conclusion above as to whether the issues are identical relies on Demaray's assertion of two separate subsections of the patent statute, the result would not apply to the extent Demaray brought claims against Samsung in the Texas action under § 271(a). Thus, while the Court's issue preclusion analysis ends here with respect to Demaray's claims against Samsung based on § 271(f), it does not resolve preclusion with respect to Demaray's claims against Samsung based on § 271(a). The Court will therefore proceed to evaluate remaining arguments regarding whether Demaray's infringement claims against Samsung based on § 271(a) in the Texas action are the same as the infringement issues against Applied here.

*Claim constructions*. Demaray argues that issue preclusion does not apply because the issues are not identical for the additional reason that the claim constructions in both cases are different, and Applied now seeks to reverse course and ignore differences in the constructions it intentionally sought. *See* Demaray MSJ 13–17. Demaray focuses on two terms at issue in both cases: "narrow band-rejection filter" (or "NBRF") and "pulsed DC power." Demaray contends that the issue of whether the Accused Chambers here satisfy this Court's constructions was neither identical nor necessarily resolved by the jury in the Texas action because Samsung argued either a narrowed construction (as to "NBRF") or an inconsistent construction (as to "pulsed DC power") with this Court's constructions. *Id.* at 14–15. Demaray also emphasizes Applied's prior statements arguing for different claim constructions in this case. *Id.* at 16. In response, Applied argues that the claim construction differences are irrelevant because the cases share Asserted Patents, and regardless, the constructions are either identical or at least "essentially" the same for preclusion purposes. Applied Reply 4.

In *SimpleAir*, the Federal Circuit held that "where different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same." *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1167 (Fed. Cir. 2018). Although the Federal Circuit in *SimpleAir* evaluated claim

preclusion between cases with different patents, this Court sees no reason (and Demaray does not meaningfully argue) why the holding would not apply equally to issue preclusion in a case where the same patents are asserted in both suits—as in this case. Thus, adopting that standard here, the Court finds that the scope of the two terms as construed in both this case and in the Texas action are, at least, "essentially the same." The "pulsed DC power supply" term was construed in both actions as "supply for providing pulsed power."[7] Claim Construction Order 3, *Demaray LLC v. Samsung Electronics Co., Ltd.*, No. 6:20-cv-636, ECF No. 121 (construing "pulsed DC power supply" as "supply for providing pulsed DC power"); Claim Construction Order, ECF No. 268 at 7 (same). And while the "NBRF" term was construed to have its plain and ordinary meaning in the Texas action, Applied has shown that the term's construction in this case (a "filter that rejects a narrow band of frequencies, including the RF bias power frequency, and passes all other frequencies") was essentially the same. Demaray argues that the construction of the "NBRF" term in this action "focuses on which frequencies are passed and which are rejected." Demaray MSJ 14. But expert testimony at trial reflects that the focus for that term was essentially the same. *See* Trial Tr. at 300:23–301:4 ("Q: The narrow band filter is meant to filter out a narrow band of frequencies and then largely pass whatever's outside of that, right? A: That's reasonable"); 309:3–9 (when asked whether the NBRF "has to reject a narrow band of frequencies" and "largely pass everything else," expert replies "I think that's fair"). The Court does not find persuasive Demaray's cited district court cases or remaining arguments to the contrary.[8] Demaray Reply 6–8; *see Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, No. 3:01-cv-485, 2009 WL 2973469 (M.D. Pa. Sept. 10, 2009); *see also KlausTech LLC v. Google LLC*, No. 4:20-cv-4459, 2021 WL

---

[7] Acknowledging that the constructions for the "pulsed DC power" term are identical, Demaray nevertheless contends that the construction Samsung *argued* at trial was materially different. Demaray Reply 8. But the relevant inquiry is whether the scope of the claims in the two suits is essentially the same. Here, the courts' constructions define the scope of the term; not the parties' arguments at trial.

[8] Demaray also suggests that the Court should not "reward Applied for Samsung's violation of black-letter law." Demaray MSJ 15, n. 5 (referring to Samsung's "serious and prejudicial error" in arguing claim construction to the jury). Whether Samsung committed error during trial in the Texas action is not before this Court.

Case No.: 20-cv-09341-EJD
ORDER ON MOTIONS FOR SUMMARY JUDGMENT
17

5414328, at *2 n.4 (N.D. Cal. Mar. 9, 2021).

In sum, the Court declines to find that differences in the construction or the parties' arguments regarding the scope of "narrow band-rejection filter" and "pulsed DC power supply" of the same Asserted Patents require a finding of different issues for issue preclusion as to § 271(a) claims.

* * *

To recap, on the question of whether the "issue" actually litigated in the Texas action is identical to the "issue" in the present action, the Court finds that Applied has not met its burden to show the issues were identical as to the Cirrus chambers, for which it is undisputed that only § 271(f) was at issue in the Texas action. However, Applied has met its burden to show the issues were identical as to any accused Avenir chambers for which § 271(a) was at issue in the Texas action. For those Avenir chambers subject to § 271(a) in the Texas action, the Court proceeds to assess whether the remaining requirements are met to establish issue preclusion.

### 2.      Whether the Issue Was Necessary to Decide the Merits in the Texas Action

For issue preclusion to apply, the issue must have been necessary to decide the merits. *Howard*, 871 F.3d at 1041. Applied argues that "[t]he record is clear that the jury rested its verdict on a finding that Applied's chambers do not practice Demaray's patents." Applied MSJ 16. It argues that a "realistic and rational reading" of the record demonstrates that the jury could have only resolved the Samsung case on the grounds of non-infringement because (1) both sides' opening and closing statements referred to the dispute over "whether Applied's Cirrus and Avenir chambers infringe the patents;" (2) the trial featured evidence of Samsung's use of the Avenir chambers domestically, and so the jury had to rest its verdict on the ground that the Avenir chambers did not practice Demaray's patents; and (3) the jury notes suggest that the jury necessarily rested its verdict on a finding of non-infringement. *See* Applied Reply 12–15.

Demaray responds that issue preclusion does not apply because the Samsung verdict and resulting judgment *may* have been based on a finding that Samsung's acts do not meet the

United States District Court
Northern District of California

1   requirements of § 271(f), including the "supplies or causes to be supplied" and intent requirements

2   of that subsection.  Demaray MSJ 22–23.  This argument is now irrelevant because the Court has

3   already found that issue preclusion does not apply to claims brought against the Cirrus chambers

4   under § 271(f) in the Texas action.  For the remaining Avenir chambers, logic dictates that the

5   Texas action verdict and resulting judgment as to the Avenir chambers that were subject to both

6   §§ 271(a) and 271(f) claims must have been based on both claims.  Specifically, to find that there

7   was no liability, the jury needed to find that there was no liability under § 271(a) and also no

8   liability under § 271(f).  If the jury found liability under one section but not the other, the jury

9   needed to check "Yes" for whether Demaray proved infringement.  Thus, the record—and

10  common sense—supports finding that the jury in the Texas action necessarily rested its verdict as

11  to the Avenir chambers on a finding of non-infringement under both §§ 271(a) and 271(f).

12                                              * * *

13          To conclude with issue preclusion, when the jury entered a verdict of noninfringement in

14  the Texas action as to the accused Cirrus chambers, issue preclusion did not bar claims against

15  those chambers in this action because only § 271(f) was at issue for the Cirrus chambers.  But

16  when the jury entered a verdict of noninfringement in the Texas action as to the accused Avenir

17  chambers, issue preclusion did bar claims against those chambers in this action because § 271(a)

18  was at issue for the Avenir chambers, and the jury necessarily rested its verdict as to those

19  chambers on a finding of non-infringement under both §§ 271(a) and 271(f).

20  **IV.    CONCLUSION**

21          After a close review of the arguments, the case law, and the record in this case, the Court

22  finds that Applied has not met its burden to prove that claim preclusion bars Demaray's claims in

23  this case because Applied was not in privity with Samsung.  As for issue preclusion, the only

24  claims that are precluded in this case are Demaray's claims against those Avenir chambers for

25  which Demaray raised a § 271(a) theory of infringement in the Texas action.  Otherwise, Applied

26  has not met its burden to show issue preclusion.

27          For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART

28  Case No.: 20-cv-09341-EJD
    ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Applied's motion and Demaray's motion as indicated above.

**IT IS SO ORDERED.**

Dated: December 19, 2024

_____
EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California